This is an appeal which originally came from the probate court of Midland county, Michigan, and involves the effect of an antenuptial agreement.
The facts have been stipulated and such of them as are necessary to decision are hereinafter related. James D. Hepinstall and Gertrude Tibbitts entered into an antenuptial agreement on June 19, 1942, which contained the following provisions:
"Now therefore, it is hereby mutually agreed as follows:
"The party of the second part Gertrude Tibbitts in consideration of the agreement herein contained hereby waives and releases to the said James D. Hepinstall and his heirs at law all claims of dower, homestead, widows allowances and rights of support and all claims as heir at law of said James D. Hepinstall in and to the property hereinafter described. Said property being described as the north half of the north half of the southeast quarter of section 9, also the southwest quarter of the northeast quarter of section 9, also the southwest quarter of the southwest quarter of section 10, Ingersoll township, Midland county, Michigan.
"2. It is understood and agreed that in the event of the death of James D. Hepinstall prior to the death of Gertrude Tibbitts, that the said Gertrude Tibbitts shall have a life estate only in the above described property and that upon her death said real estate shall go to the heirs at law of James D. Hepinstall."
On June 20, 1942, the parties to the agreement were married and shortly thereafter moved on the farm owned by James D. Hepinstall and lived there as husband and wife until the death of Mr. Hepinstall on July 20, 1947. Gertrude Hepinstall continued to live on the farm after the death of her husband until December 9, 1947, at which time she *Page 325 
rented the farm to tenants who are now in possession.
James D. Hepinstall had entered into a sharecroppers' agreement under the terms of which he furnished one half of the seed, gasoline, thresh bill, fertilizer and was to receive one half of the proceeds from all crops grown on the farm. Under the agreement wheat, oats and beans were grown upon the farm. The wheat and oats were cut on or about August 2, 1947, after the death of Mr. Hepinstall. The beans were harvested in October, 1947.
The administrator of the estate took possession of the proceeds of the crops. Plaintiff, Gertrude Hepinstall, petitioned the probate court requesting, among other things, that the administrator be required to pay over to her the net proceeds from the crops. On October 15, 1947, the probate court entered an order denying that portion of plaintiff's petition and held that the growing crops on the farm were personal property of the estate. Plaintiff appealed to the circuit court and judgment was entered therein affirming the order of the probate court.
Plaintiff appeals and urges that the law of emblements is not controlling of the facts in the case at bar; and that James D. Hepinstall, at the time of his death, in view of the share-cropper agreement, was not an owner of such an interest in the crops as could be enforced by his personal representative.
Act No. 288, chap. 2, § 59, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289-2[59], Stat. Ann. 1943 Rev. § 27.3178 [129]), provides:
"The personal estate of the decedent shall include all growing crops of grain, grass and fruit unless by will, if there be one, said property or any part thereof is plainly directed to pass with the real estate." *Page 326 
Plaintiff urges that the above statute applies to the rights of the administrator as against the rights of the heirs at law or devisees and legatees under a will; and that the rights of plaintiff do not arise by virtue of the death of James D. Hepinstall as she does not take by descent, but by purchase under the antenuptial agreement.
Prior to 1875, the statute pertaining to administration of estates of decedents contained no mention of growing crops. Revised Statutes 1846, chap. 71, § 6 (being 2 Comp. Laws 1857, § 2903, and 2 Comp. Laws 1871, § 4406), provided:
"The personal estate of the deceased which shall come into the hands of the executor or administrator, shall be first chargeable with the payment of the debts and expenses; and if the goods, chattels, rights and credits, in the hands of the executor or administrator, shall be not sufficient to pay the debts of the deceased and the expenses of administration, the whole of his real estate, except the widow's dower, or so much thereof as may be necessary, may be sold for that purpose by the executor or administrator, after obtaining license therefor in the manner provided by law."
Act No. 136, Pub. Acts 1875, amended the above statute to read, in part, as follows:
"SEC. 6. The personal estate of the deceased, including all growing crops of grain, grass, and fruit not disposed of by special mention in the will of the deceased, and by said will plainly directed to pass with the real estate, which shall come into the hands of the executor or administrator, shall be first chargeable with the payment of debts and expenses."
Having in mind that the law of Michigan has not treated growing crops for all purposes as either personality or realty (Tripp
v. Hasceig. 20 Mich. 254 (4 Am. Rep. 388); Scriven v.Moote, 36 Mich. 64; *Page 327 McGee v. Walker, 106 Mich. 521), it follows that under the act, above quoted as amended in 1875, growing crops were considered as the personal estate of the deceased and as such came into the possession of the executor or administrator and were chargeable with the payment of debts and expenses of the estate. The present statute was intended to clearly and unmistakably clear up any doubt that may have existed as to an administrator's right to the growing crops of an intestate and to expressly classify the interest of an intestate in growing crops as personalty in so far as that interest is affected by other laws pertaining to an intestate's estate, such as descent and distribution, payment of debts and rights of widow therein.
Plaintiff urges that her right to the crops does not arise by virtue of the death of James D. Hepinstall, inasmuch as she does not take by descent, but takes by purchase under the antenuptial agreement; and that the antenuptial agreement created the interest of plaintiff by a conveyance intervivos, the actual right to possession being contingent only upon the happening of a future event, to wit, the death of the grantor.
Defendants urge that by the execution of the antenuptial agreement James D. Hepinstall retained a life estate in himself, to which the law of emblements applied, and conveyed to plaintiff a life estate to vest in possession upon the death of James D. Hepinstall.
Antenuptial agreements have been designated as binding and enforceable contracts, see Detroit Trust Co. v. Baker,230 Mich. 551.
In Seuss v. Schukat, 358 Ill. 27 (192 N.E. 668, 95 A.L.R. 1461), it is said:
"The principles of construction applicable to antenuptial agreements and to contracts generally are *Page 328 
the same. (1 Schouler on Marriage, Divorce, Separation and Domestic Relations (6th Ed.), p. 513; Collins v. Phillips,259 Ill. 405 [102 N.E. 796, Ann. Cas. 1914C, 188].) In ascertaining the intention of the parties, the entire agreement, its general scope and purpose and the attendant circumstances at the time of execution should be considered. (Collins v.Phillips, supra; Dunlop v. Lamb, 182 Ill. 319
[55 N.E. 354].)"
It is our opinion that upon the marriage of the parties, the agreement became a binding contract, a provision of which created a life estate in plaintiff in certain described property of her husband upon the happening of the contingency that plaintiff should survive her husband. One of the purposes of the agreement was to fix the rights of plaintiff in certain of her husband's property upon his death, if she survived him. Under the agreement there was no present transfer of any estate to plaintiff on the creation of a chose in action in her. Plaintiff's right to possession did not arise until the death of her husband. Under the authority of McDaniels v. Walker, 44 Mich. 83, plaintiff, not being in possession or entitled to possession under the contract at the time the crops were sown, may not recover.
The judgment of the circuit court is affirmed, with costs to appellees.
BUSHNELL, C.J., and BOYLES, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred. *Page 329