SUMPTER v KOSINSKI

Docket No. 89376. Submitted February 3, 1987, at Lansing. Decided
February 1, 1988. Leave to appeal applied for.

Alana C. MacDonald met Charles L. Sumpter at a business
meeting. They soon became friends and MacDonald informed
Sumpter that she wanted to divorce her husband. Sumpter
referred her to Raymond Kosinski, Sumpter's own attorney,
who represented MacDonald in her divorce action against her
husband. MacDonald and Sumpter then began making wedding
plans. Sumpter's accountant suggested to Sumpter that Sump-
ter and MacDonald sign an antenuptial agreement so that
Sumpter's assets would not be exposed again as they had in his
previous divorces. Sumpter informed MacDonald of this and
explained that the agreement would provide that in the event
of divorce MacDonald would receive $15,000 per year for every
year less than six that the parties were married and MacDon-
ald was not employed. The agreement was prepared by Kosin-
ski and also provided that if the parties were married and
living together as husband and wife at the time of Charles
Sumpter's death, Alana Sumpter would receive the marital
home in which they were then living, subject to any mortgage
or other claim that might exist against the home, and that, in
the event of the death of either, the other party would accept
the terms and provisions under the will of the decedent in full
settlement. MacDonald went to Kosinski's office to sign the
agreement and, in discussing the agreement, was surprised to

REFERENCES

Am Jur 2d, Courts § 67.
Am Jur 2d, Guardian and Ward §§ 154 *et seq.*
Am Jur 2d, Husband and Wife §§ 296-300, 310, 313.
Am Jur 2d, Summary Judgment § 26.
Waiver of right to widow's allowance by antenuptial agreement. 30
ALR3d 858.
Noncompliance with statutory requirements concerning form of
execution or acknowledgment as affecting validity or enforceabil-
ity of written antenuptial agreement. 16 ALR3d 370.
Setting aside antenuptial contract or marriage settlement on
ground of failure of spouse to make proper disclosure of property
owned. 27 ALR2d 883.

learn that the agreement contained estate planning provisions. Kosinski also told MacDonald that Sumpter had instructed him to prepare a new will, entitling MacDonald to a one-fourth share of his estate. The other three-fourths would go equally to his three children. Kosinski, after asking MacDonald if she wanted to have the agreement reviewed by another attorney and being told that she didn't have time before the wedding, told her he would represent both her and Sumpter. MacDonald signed the agreement. The next day, Sumpter signed the agreement and the couple were married. Approximately two months later, Charles Sumpter died. His existing will had never been changed to include Alana MacDonald Sumpter. Alana Sumpter filed suit against Raymond A. Kosinski and Comerica Bank, co-personal representatives of the estate of Charles L. Sumpter, deceased, in Livingston Circuit Court seeking to have the antenuptial agreement declared void. Charles Sumpter's children, Richard J. Sumpter, Charles L. Sumpter, and Kipling T. Sumpter, sought to intervene, but their motion was denied, Stanley J. Latreille, J. Following trial, the court ruled that Kosinski's dual representation of plaintiff and Charles Sumpter constituted a constructive fraud and that the antenuptial agreement therefore was void. Defendants appealed and, on appeal, the motion to intervene by the children of Charles Sumpter was granted.

The Court of Appeals *held:*

1. The circuit court had subject matter jurisdiction over this case.

2. The circuit court correctly denied defendants' motion for summary judgment in which they contended that plaintiff knowingly signed the antenuptial agreement giving up her rights under the Revised Probate Code. Plaintiff's complaint, deposition testimony and answers to interrogatories raised a genuine issue of material fact as to whether she signed the antenuptial agreement with the understanding that Sumpter would change his will to provide for her.

3. The trial court did not err in denying the intervening appellants' motion to intervene.

4. The trial court's ruling that the antenuptial agreement was void because of constructive fraud due to Kosinski's dual representation of MacDonald and Sumpter was clearly erroneous. The proofs do not support a breach of any legal or equitable duty owed by Kosinski to MacDonald. Furthermore, there was no deception.

5. Any error that may have occurred as a result of the trial

court's admitting evidence regarding alleged business dealings and financial records of Charles Sumpter was harmless.

6. The trial court's decision is reversed and the matter is remanded for a determination as to whether the deceased agreed to provide for the plaintiff in a will and, if so, whether the plaintiff is entitled to receive the marital home, the identified personal property, and a one-fourth interest in the residue of the estate.

Reversed and remanded.

BEASLEY, P.J., dissented. In his dissent, Judge BEASLEY states that it was not error for the trial court to consider general principles of contract law or accepted grounds for constructive fraud in deciding whether the antenuptial agreement was valid, that it was not improper for the court to consider Kosinski's actions a breach of duty to plaintiff, and that evidence of Charles Sumpter's agreement to make a new will could be used collaterally to attack the validity of the antenuptial agreement, even though there was nothing in writing showing such an agreement. He also states that, because Kosinski breached his duty to plaintiff, her execution of the antenuptial agreement under the mistaken belief that she would be provided for by will was a proper additional ground for invalidating the antenuptial agreement. He would hold that the trial court therefore did not err in holding that the antenuptial agreement was void. He also states that the circuit court had jurisdiction to hear the case, that the court did not err in denying the intervening appellants' motion to intervene, that the trial court's findings of fact were sufficient, and that the court did not err in admitting evidence of Charles Sumpter's business dealings and financial records into evidence. He would affirm the trial court's judgment that the antenuptial agreement was void.

1. COURTS — SUBJECT MATTER JURISDICTION.

Subject matter jurisdiction can be considered at any stage of a proceeding because it calls into question the power of the court to hear a case; actions of the parties cannot operate as a waiver of or consent to subject matter jurisdiction.

2. COURTS — JURISDICTION — ANTENUPTIAL AGREEMENTS.

The circuit court has jurisdiction over a claim attacking the validity of an antenuptial agreement where a promise to execute a new will is involved and the promisor dies before executing the new will because the probate court has not expressly been granted exclusive jurisdiction over such claims and the Legislature has granted concurrent jurisdiction to the

circuit and probate courts over matters affecting the distribution of estates (MCL 600.605, 700.21, 700.22; MSA 27A.605, 27.5021, 27.5022).

3. Judgments — Summary Judgment.

Summary judgment for a defendant may properly be entered where a plaintiff's deposition testimony negates causation; such judgment may also be entered if statements of fact are made in a clear, intelligent and unequivocal manner in absence of any explanation or showing of mistake (GCR 1963, 117.2[1], [3]; MCR 2.116[C][8], [10]).

4. Evidence — Parol Evidence Rule — Extrinsic Evidence.

The parol evidence rule bars extrinsic evidence of prior agreements only when the parties intended their written agreement to be final and complete; however, exceptions to the rule permit extrinsic evidence to be admitted to show that a contract has no effect because of fraud, illegality, or mistake or to show that the contract was only partially integrated because essential elements were not reduced to writing.

5. Actions — Intervention — Court Rules.

The determination of whether to allow a party to intervene in an action as of right rests in the sound discretion of the trial court and is governed by court rule (GCR 1963, 209.1; MCR 2.209[A]).

6. Actions — Intervention — Court Rules.

The court rule providing for intervention in an action as of right should be liberally construed to allow intervention when the applicant's interest may be inadequately represented (GCR 1963, 209.1; MCR 2.209[A]).

7. Courts — Probate Court — Circuit Court — Guardians Ad Litem.

The probate court has no authority to appoint a guardian ad litem to represent a minor in a circuit court proceeding.

8. Husband and Wife — Antenuptial Agreements — Disclosure of Assets — Burden of Proof — Presumptions.

The burden of proving nondisclosure of assets upon making an antenuptial agreement is on the party seeking to invalidate the agreement; however, a rebuttable presumption of nondisclosure may arise where: the agreement provides for the complete waiver by the widow of all rights in her husband's property and of her right of election without making any provision for her upon her husband's death; the husband's estate is ample compared to his wife's; the decedent is shown to have been rather

secretive about his financial affairs, to have lived modestly, and to have given no outward appearance of wealth; the agreement does not indicate, generally or specifically, whether the parties were fully informed of each other's property interests; the widow was not represented by independent counsel; and the drafter is unable to testify that full disclosure was made by the parties, and had no concern at the time of the agreement about the widow's share of the property upon her husband's death.

9. HUSBAND AND WIFE — ANTENUPTIAL AGREEMENTS — DISCLOSURE OF ASSETS.

An antenuptial agreement, to be valid, must be fair, equitable, and reasonable in view of the surrounding facts and circumstances; each party must enter the agreement voluntarily and must provide fair disclosure of assets to enable the other to understand the rights involved and the extent of the waiver of such rights.

10. FRAUD — CONSTRUCTIVE FRAUD.

Constructive fraud is a breach of a legal or equitable duty that tends to deceive others, regardless of the moral guilt of the person committing the fraud; there can be no constructive fraud where there is no breach of duty or no tendency to deceive.

11. COURTS — COURT RULES — BENCH TRIALS — FINDINGS OF FACT — CONCLUSIONS OF LAW.

A trial court sitting without a jury is required by court rule to make special findings of fact and to state separately its conclusions of law, and minimal compliance with the rule is satisfactory, provided the court reveals the factual basis for its ultimate conclusions (MCR 2.517[A]).

*Brennan & Burns* (by *John R. Brennan* and *Theresa M. Brennan*), for plaintiff.

*Law Offices of John W. Mason, P.C.* (by *John W. Mason*), and *Mary Taylor Zick,* for defendants.

*Paul R. Mahinske,* for Richard J. Sumpter, Charles L. Sumpter, and Kipling T. Sumpter, intervening appellants.

Before: BEASLEY, P.J., and CYNAR and R. C. AN-
DERSON,* JJ.

CYNAR, J. Plaintiff, Alana C. Sumpter, filed this
action in circuit court to have an antenuptial
agreement declared void. Following a six-day
bench trial, the antenuptial agreement was de-
clared void and defendants appeal as of right.
Richard John Sumpter, Charles Lynn Sumpter
and Kipling Thomas Sumpter filed a motion to
intervene, which was granted by this Court.

Plaintiff was thirty years old at the time of trial.
She was a 1975 university graduate with a B.A.
degree in communications.

In November, 1981, plaintiff was employed by
Manufacturer's Bank as a trust officer. She met
Charles L. Sumpter at a business meeting in con-
nection with the nursing home association of
which Sumpter was executive director. By Decem-
ber, 1982, the relationship between plaintiff and
Charles Sumpter had become more than a busi-
ness relationship and they were discussing mar-
riage.

Sometime prior to December, 1982, plaintiff was
married to a Mr. MacDonald. However, she
wanted a divorce and Charles Sumpter referred
her to his own attorney, Raymond Kosinski. Kosin-
ski represented plaintiff in her divorce from Mr.
MacDonald. She received her personal property,
household furniture and furnishings, china and
silver, a 1983 Chrysler automobile and cash in
bank accounts of approximately $45,000 as a prop-
erty settlement.

When plaintiff and Charles Sumpter first dis-
cussed marriage, they chose a date in May over a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

September wedding. However, in late May, 1983, the wedding date was changed to June 9, 1983.

On about June 1, 1983, plaintiff became ill. On Monday, June 6, 1983, her illness was diagnosed as strep throat and she was given medication. Later that evening, plaintiff was in bed when Charles Sumpter discussed wedding plans with her. He said that his accountant had called and suggested that an antenuptial agreement be signed so that Sumpter's assets would not be exposed again as they had in his prior divorces. Charles Sumpter informed plaintiff that the agreement would provide that in the event of divorce plaintiff would receive $15,000 per year for every year less than six that the parties were married and plaintiff was not employed. The $15,000 figure was arrived at because it was approximately one-half of plaintiff's salary. Six years was chosen because that was the longest that either plaintiff or Charles Sumpter had ever been married. This entire conversation lasted ten or fifteen minutes. Plaintiff testified that Charles Sumpter led her to believe that the agreement that was to be prepared would provide for division of property in the event of divorce.

On the following day, Tuesday, June 7, plaintiff stayed home from work again because of her illness. Charles Sumpter had gone to work during the day. He returned home in the evening but left again around 6:00 P.M. to attend a bachelor party. Before he left, he told plaintiff that she should call Kosinski the next day to set up a time for signing the antenuptial agreement. Charles returned home from the bachelor party at about 1:00 A.M. on the morning of Wednesday, June 8. He and plaintiff stayed up until 2:00 or 3:00 A.M. because plaintiff wanted to discuss some intimate matters revealed to her by Charles Sumpter's mother in a conversa-

tion that evening. The antenuptial agreement was not discussed.

Plaintiff went to work on the morning of Wednesday, June 8, even though she was still quite ill. She felt she had to go into the office because she had been on vacation the prior week, was out because of illness on Monday and Tuesday, and would be gone again on Thursday and Friday for her wedding and honeymoon. Plaintiff arrived at her office at 8:00 A.M. At about 9:00 A.M., she called Kosinski. Plaintiff spoke to Kosinski directly and they agreed that plaintiff would stop at his office on her way home from work at 3:30 or 4:00 P.M.

After having a late lunch with a friend, plaintiff arrived at Kosinski's office at about 3:00 P.M. Kosinski was at a picnic and had not returned yet, so plaintiff waited for him. She knew she had arrived early but was hoping Kosinski would be ready to see her because she was still ill and wanted to go home. When Kosinski did arrive, he spoke to plaintiff for several minutes about Charles Sumpter's prior marriages. He had the antenuptial agreement in front of him but did not give plaintiff a copy. Kosinski reviewed the agreement with plaintiff by reading certain portions verbatim and paraphrasing other portions. The portions that were read verbatim were the sections listing assets of both Charles Sumpter and plaintiff. Plaintiff told Kosinski that she no longer had $45,000 in bank accounts. Kosinski had gotten the $45,000 figure from plaintiff's prior divorce settlement and had not verified it with plaintiff prior to preparing the antenuptial agreement.

When Kosinski mentioned estate planning provisions, plaintiff expressed surprise because Charles Sumpter had not previously mentioned estate planning to her. Kosinski said that he had told

Charles Sumpter that estate planning provisions had to be in the document because an agreement that only contemplated divorce was not valid in Michigan. Further, Kosinski said that Charles Sumpter had instructed him to prepare a new will. Kosinski then showed plaintiff the will that Charles Sumpter executed in 1980, which left his former wife, Rhonda, an equal share with his three children. Plaintiff was told that Rhonda's name would be taken out and her name would be inserted.

After Kosinski reviewed the agreement with plaintiff, he asked her if she was planning on having her own attorney. Plaintiff said she did not have time because she had many things to take care of prior to her wedding the next day. Kosinski said that he could represent both plaintiff and Charles Sumpter. He never told plaintiff that she should get her own attorney or that there could be any conflict because of his dual representation. Rather, he led plaintiff to believe that it was in her best interest to sign the agreement. The meeting lasted thirty-five to forty minutes. Plaintiff signed the antenuptial agreement, but Kosinski did not give her a copy to take with her. She received a copy in the mail about one month later.

Plaintiff returned home around 6:00 that evening. Some of Charles Sumpter's family had already arrived for the wedding the next day. Plaintiff talked to Charles Sumpter privately and asked him about the estate provision in the antenuptial agreement. Charles Sumpter corroborated Kosinski's statement about redrafting the will to provide for plaintiff.

Approximately two months after the wedding, Charles Sumpter had a heart attack. After an eight- or nine-day hospital stay, he died on August

17, 1983. His previous (1980) will was never changed.

On cross-examination, plaintiff's testimony was not consistent with her prior answers to interrogatories and the allegations in the complaint. Although asked in the interrogatories to describe every alleged fraudulent act of Kosinski, plaintiff never mentioned that he actually showed her Charles Sumpter's 1980 will and said she would get one-quarter of the estate in place of Rhonda Sumpter. Furthermore, plaintiff said during her deposition that she understood that the antenuptial agreement allowed her and Charles Sumpter to dispose of their assets by will in any manner they wished. Plaintiff explained that she meant Charles Sumpter had discretion as to the remaining seventy-five percent of his assets. Plaintiff reiterated her belief that execution of a new will was to be part of the antenuptial agreement. However, she never asked Charles Sumpter whether he had executed a new will. When she received a signed copy of the antenuptial agreement in the mail, she neither discussed it with her husband nor took it to an attorney.

Katherine Gilson, a former attorney for Alana Sumpter, testified that she spoke on the telephone with Kosinski shortly after Charles Sumpter's death. Kosinski said that it was his understanding that Charles Sumpter was going to change his 1980 will to provide that Alana Sumpter would receive one-fourth of his estate. Katherine Gilson signed an affidavit regarding her conversation with Kosinksi and it was introduced as an exhibit. A note made by Gilson during a conversation with Alana Sumpter was also introduced. The note said that Charles Sumpter had prepared a new will but it was never signed.

Immediately before resting her case, plaintiff

moved to amend her complaint, requesting in the alternative, should the trial court determine the antenuptial agreement to be legal and valid, that the court further determine and hold that plaintiff had a right to the home, identified personal property and one-fourth of the residue of the estate. The motion was granted although opposed by the defense.

Kosinski testified that he prepared the antenuptial agreement according to Charles Sumpter's instructions. The agreement was typed in final form around June 1, but Kosinski could not recall whether he made any attempt to contact plaintiff. Kosinski claimed it was the morning, not the afternoon, of June 8, that plaintiff came to see him. He was under the impression that plaintiff and Charles Sumpter would come to his office together. When Charles Sumpter was not with plaintiff, Kosinski asked where he was and plaintiff said he was coming in the afternoon.

When Kosinski saw that plaintiff was alone, he told her to see her own attorney. She said that Kosinski was her attorney. Kosinski insisted that there were many attorneys in the area, including the Manufacturer's Bank Trust Office, where Kosinski knew someone who would most likely be willing to review the agreement. Plaintiff insisted that she did not want to and that the time factor was not important because all she had on her schedule for the evening was dinner.

Kosinski left the room to discuss the matter with his partner. They reviewed *In re Benker Estate,* 416 Mich 681; 331 NW2d 193 (1982), and determined that the standards set out in that case had been met and it would be proper to represent plaintiff. Plaintiff signed a statement consenting to the representation. Plaintiff also signed the antenuptial agreement. Kosinski said that plaintiff had

the antenuptial agreement in her hand as he went over it with her. After going through the entire agreement, he asked plaintiff if it accurately reflected the agreement she made with Charles Sumpter. She said, "I think so." Kosinski told plaintiff that it had to be the agreement she had made or else it would be changed. He told her not to sign the agreement if she did not want to. According to Kosinski, plaintiff said that Charles Sumpter told her a long time ago that he would not marry her unless an antenuptial agreement was made. Kosinski said he never showed plaintiff a copy of Charles Sumpter's 1980 will because that would have been unethical and because all wills in his office are kept in a locked file drawer. Kosinski pointed out to plaintiff that she was getting a very small percentage of Charles Sumpter's estate under the antenuptial agreement and she was getting no cash. She replied that if anything ever happened to Charles Sumpter, she would sell the house.

On the first day of trial, defendants made a motion in limine to exclude evidence relating to the finances of Charles Sumpter and Fairlane Convalescent Home, which he owned. The trial judge ruled that the financial information could not be admitted to show that there was nondisclosure of assets because plaintiff had not alleged nondisclosure. However, plaintiff had alleged that the disparity in assets between Charles Sumpter and plaintiff rendered the antenuptial agreement void. Therefore, the financial information would be admitted to show that there was a large disparity in assets.

Officers of Comerica Bank, Fairlane Convalescent Home, and Charles Sumpter's CPA were called as witnesses. They produced financial documents relating to the approximately $2,000,000 net worth

of Charles Sumpter and the Fairlane Convalescent Home. The records were admitted into evidence. Counsel for defendants made a continuing objection on grounds of relevancy to most of the financial records. However, Comerica Bank's credit file for Fairlane Convalescent Home was admitted without objection.

The Comerica Bank credit file contained copies of newspaper articles regarding indictments in federal court against Charles Sumpter and others for Medicare fraud. Defendants objected on grounds of relevancy. The objection was overruled.

At the conclusion of trial, the trial judge ruled that Kosinski's dual representation of plaintiff and Charles Sumpter constituted a constructive fraud. Thus, the antenuptial agreement was void. At the hearing on entry of judgment, the trial judge made further rulings at the request of defendants. He ruled that he was finding in favor of plaintiff on all counts of the complaint except the one for "undue influence and duress," which had already been disposed of by summary disposition.

I

### DID THE CIRCUIT COURT HAVE SUBJECT MATTER JURISDICTION?

Intervening appellants argue that the probate court had exclusive jurisdiction. Plaintiff maintains that her action is purely equitable in nature and the probate court does not have equitable jurisdiction.

Defendant Kosinski moved to transfer the action from circuit court to probate court. The circuit court denied the motion. Plaintiff argues that intervening appellants are precluded from raising the subject matter issue on appeal since they did not timely appeal from the trial court's order.

It is well established that subject matter jurisdiction can be considered at any stage of a proceeding because it calls into question the power of the court to hear a case. Actions of the parties cannot operate as a waiver of or consent to subject matter jurisdiction. *Goodman v Bay Castings Div of Gulf & Western Industries,* 49 Mich App 611, 625; 212 NW2d 799 (1973); *Hastings v Hastings,* 154 Mich App 96, 99; 397 NW2d 232 (1986).

The circuit court had subject matter jurisdiction over the instant case. MCL 600.605; MSA 27A.605 provides:

> Circuit courts have original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state.

Exclusive jurisdiction is granted to the probate court over certain matters as provided in MCL 700.21; MSA 27.5021. If a matter is not one of exclusive jurisdiction, the probate court may exercise concurrent jurisdiction with other courts over matters that are ancillary to the settlement of an estate as provided under MCL 700.22; MSA 27.5022.

There are no Michigan cases deciding whether a claim contesting the validity of an antenuptial agreement is a "matter relating to the settlement of the estate of a deceased person," which would give the probate court exclusive jurisdiction. In *York v Isabella Bank & Trust,* 146 Mich App 1; 379 NW2d 448 (1985), this Court had to decide whether the probate court had exclusive jurisdiction over claims against a personal representative of an estate. This Court held that some of the

claims were within the exclusive jurisdiction of the probate court, while others were exclusively within the jurisdiction of the circuit court (i.e., intentional infliction of emotional distress).

It was held in *In re Kus Estate,* 136 Mich App 343; 356 NW2d 23 (1984), that a probate court has no jurisdiction over a breach of contract claim made by the personal representative of an estate. The breach of contract claim had nothing to do with administration of the estate, and a probate court does not become a court of general jurisdiction merely because an estate is involved. The probate court can only acquire jurisdiction when jurisdiction is expressly granted to it by statute.

However, it is not clear under *York* or *Kus* whether determining the validity of an antenuptial agreement is a matter related to the estate of a deceased person which would give the probate court exclusive jurisdiction. Therefore, since the probate court has not expressly been granted exclusive jurisdiction over claims attacking the validity of antenuptial agreements, and since the Legislature has granted concurrent jurisdiction over matters affecting the distribution of estates, we conclude that the circuit court had jurisdiction over this matter.

Intervening appellants, relying on *In re Cain Estate,* 147 Mich App 615; 382 NW2d 829 (1985), contend that, once a court acquires jurisdiction, its jurisdiction cannot be interfered with by another court. However, as indicated in *Kus,* the mere fact that an estate is involved will not necessarily vest jurisdiction in the probate court.

Additionally, the necessity for equitable relief is another reason for finding that the probate court does not have exclusive jurisdiction. The trial court's ruling on this issue does not require reversal.

II

### DID THE CIRCUIT COURT ERR IN DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT?

Defendants moved for summary judgment pursuant to GCR 1963, 117.2(1) and (3). Under Rule 117.2(3), now MCR 2.116(C)(10), the factual support for a claim is tested. The trial court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence to determine whether it is possible for the claim to be supported at trial. *Brooks v Reed,* 93 Mich App 166, 170; 286 NW2d 81 (1979), lv den 411 Mich 862 (1981). Under Rule 117.2(1), now MCR 2.116(C)(8), the standard to be applied is whether plaintiff's claim, on the pleadings alone, is so clearly unenforceable as a matter of law that no factual development could possibly justify a right to recovery. *Stewart v Isbell,* 155 Mich App 65, 74; 399 NW2d 440 (1986).

The request for summary judgment was based on the plaintiff's deposition which indicated that plaintiff knowingly signed the antenuptial agreement giving up her rights under the Revised Probate Code. Defendants also argued that any alleged promise by Sumpter to change his will lacked specificity and that a broken promise or unfulfilled prediction cannot constitute fraud. Further, even if decedent promised to provide for plaintiff, this promise was in contravention of the parol evidence rule and the statute of frauds. The trial court denied the motion on the basis that the case was not ripe for summary judgment.

On January 14, 1985, defendants renewed their motion for summary judgment. Following a further hearing and the filing of supplemental briefs, the trial court issued a written opinion. Summary judgment was granted on Count IV, "Lack of Am-

ple *Opportunity to Review and Obtain Independent Advice*", in which duress and undue influence were alleged, on the basis that there was no genuine issue of material fact or that there was a failure to state a valid claim. Summary judgment was denied on the other counts of plaintiff's complaint on the basis that the trial court found a genuine issue of material fact existed regarding whether the antenuptial agreement was entered into with the understanding that plaintiff would be provided for in the will of Charles Sumpter. More specifically, the court observed that the question was whether, at the time the antenuptial agreement was executed, Alana C. Sumpter understood and Charles Sumpter intended that Alana C. Sumpter would receive one-fourth of the estate of Charles Sumpter.

Summary judgment for a defendant may properly be entered where a plaintiff's deposition testimony negates causation. Such judgment may also be entered if statements of fact are made in a clear, intelligent and unequivocal manner in absence of any explanation or showing of mistake. *Stefan v White,* 76 Mich App 654, 659; 257 NW2d 206 (1977); *Southern Rendering Co v Standard Rendering Co,* 112 F Supp 103, 108 (ED Ark, 1953).

Plaintiff's complaint, deposition testimony and answers to interrogatories raised a genuine issue of material fact as to whether she signed the antenuptial agreement with the understanding that her husband to be would change his will to provide for her.

Defendants further argue that, since it is premised on an oral agreement, plaintiff's claim is barred as a matter of law by the parol evidence rule. However, the trial court noted in its opinion that the parol evidence rule bars extrinsic evidence of prior agreements only when the parties

intended their written agreement to be final and complete. It was noted in *Goodwin, Inc v Orson E Coe Pontiac, Inc,* 392 Mich 195, 204; 220 NW2d 664 (1974), and *NAG Enterprises, Inc v All State Industries, Inc,* 407 Mich 407, 410-411; 285 NW2d 770 (1979), that there are a number of exceptions to the parol evidence rule. Extrinsic evidence is admissible to show that a contract has no effect because of fraud, illegality, or mistake, or to show that the contract was only partially integrated because essential elements were not reduced to writing. *Id.* In this case, extrinsic evidence was admissible to show that plaintiff executed the agreement through fraud or by mistakenly believing that her husband would provide for her in his will. Also, extrinsic evidence was properly introduced to show that the antenuptial agreement was not fully integrated. Therefore, summary judgment was correctly denied.

## III

### DID THE CIRCUIT COURT ERR IN DENYING INTERVENING APPELLANTS' MOTION TO INTERVENE?

We review this issue although intervening appellants did not file a timely appeal from the circuit court order denying intervention.

GCR 1963, 209.1, now MCR 2.209(A), provides:

.1 Intervention of Right. Anyone shall be permitted to intervene in an action

(1) when a statute of this state or a court rule confers an unconditional right to intervene; or

(2) by stipulation of all the parties; or

(3) upon timely application when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant may be bound by a judgment in the action; or

(4) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody or subject to the control or disposition of the court or officer thereof.

Intervention is a matter of discretion with the trial judge. *Dudkin v Civil Service Comm,* 127 Mich App 397, 404; 339 NW2d 190 (1983). However, the court rule should be liberally construed to allow intervention when the applicant's interest may be inadequately represented. *D'Agostini v City of Roseville,* 396 Mich 185, 188-189; 240 NW2d 252 (1976).

Gerald Coughlin, guardian ad litem of Kipling Thomas Sumpter, filed a motion to intervene in the circuit court proceeding alleging that Kipling Thomas Sumpter's interest might not be adequately represented. A personal representative has the duty to protect the estate from unlawful demands. *In re Brack Estate,* 121 Mich App 585, 590; 329 NW2d 432 (1982). After a hearing, the circuit court ruled that there had been no showing that Kipling Thomas Sumpter's interest might not be adequately represented. Additionally, the circuit court found that Gerald Coughlin, as guardian ad litem, had no standing to intervene in circuit court. The probate court has no authority to appoint a guardian ad litem to represent a minor in a circuit court proceeding. *King v Emmons,* 283 Mich 116, 125; 277 NW 851 (1938). The trial court did not abuse its discretion in its ruling on this issue.

## IV

### DID THE CIRCUIT COURT ERR IN RULING THAT THE ANTENUPTIAL AGREEMENT WAS VOID?

Appellants contend that the circuit court erred

in holding that the antenuptial agreement was void. In his opinion, the trial judge considered the factors set out in *In re Benker Estate, supra.* In *Benker,* the Supreme Court found that an antenuptial agreement must be based on a fair disclosure of assets by both parties in order to be valid and that when certain factors are present, a rebuttable presumption of nondisclosure will be created. The factors involved in the *Benker* case were: (1) the lack of any provision for the widow in the agreement; (2) the fact that the deceased husband had a very ample estate compared to the widow's estate; (3) the modest lifestyle of the decedent husband and the lack of any outward appearance of wealth; (4) the fact that there was no indication, in general or in specific terms, that either party was informed as to the property interests of the other; (5) the lack of independent counsel representing the widow; (6) the fact that the attorney who drafted the agreement could only testify as to his normal procedure, which included a discussion of assets but did not include the disclosure of undisclosed assets; and (7) the fact that the scrivener testified that he was not concerned with what the widow would get. 416 Mich 683-684. In the instant case, most of the factors in the *Benker* case are not present. In dicta, the *Benker* Court also stated:

> In order for an antenuptial agreement to be valid, it must be fair, equitable, and reasonable in view of the surrounding facts and circumstances. It must be entered into voluntarily by both parties, with each understanding his or her rights and the extent of the waiver of such rights. [*Benker, supra,* p 689.]

In the instant case, the trial judge applied the

factors in *Benker* in ruling that the antenuptial agreement was invalid. He noted, however, that *Benker* was only considered as a guideline because *Benker* dealt with the issue of nondisclosure of assets while the instant case did not allege nondisclosure. The trial court had ruled on a motion in limine that evidence of nondisclosure of assets could not be introduced because it was not alleged by plaintiff.

After considering some of the factors in *Benker,* the trial judge made his initial ruling that the antenuptial agreement was invalid because of constructive fraud. A trial court's finding will not be set aside unless clearly erroneous. *Darnell v Auto-Owners Ins Co,* 142 Mich App 1; 369 NW2d 243 (1985). Special deference is given to the trial court's assessment of the credibility of witnesses. *Kroll v Crest Plastics, Inc,* 142 Mich App 284; 369 NW2d 487 (1985). Unlike active fraud, constructive fraud has been defined as a breach of a legal or equitable duty that tends to deceive others, regardless of the moral guilt of the person committing the fraud. *Goodrich v Waller,* 314 Mich 456; 22 NW2d 862 (1946); *General Electric Credit Corp v Wolverine Ins Co,* 420 Mich 176; 362 NW2d 595 (1984).

There is no dispute that the deceased had been married four times, had three children, and the plaintiff had been married twice prior to the present marriage. Plaintiff, age twenty-eight, was an experienced, well-educated, mature and sophisticated businesswoman. There is no dispute that plaintiff was aware Kosinski had represented Sumpter individually and in his past business dealings. There is no dispute that plaintiff was aware of the wealth of the deceased before the marriage. There is also no dispute that the deceased had prior marital problems and was desi-

rous of protecting his assets in the event of a divorce. There is also no dispute that the time moved swiftly from the engagement in November, 1982, with the changing of marriage dates, to the date of the marriage. It should be observed that, when affairs of the heart are involved, legal guidance no matter how appropriate is often not heeded. There is no dispute that the provision for a home for plaintiff identified the marital home as being the home the parties were occupying at the time of the husband's demise. Based on what was known about the business dealings of the deceased, the mortgage on the marital home was no surprise. However, there was no indication that such encumbrance would exist if death was expected. It was undisputed that this was a happy marriage which ended after sixty-nine days as a result of this thirty-nine-year-old husband's unexpected death.

Assuming reliance on the definition of constructive fraud to be a breach of legal or equitable duty that tends to deceive others, regardless of the moral guilt of the person committing the fraud, the trial court's reasons for ruling the antenuptial agreement void were clearly erroneous.

The proofs do not support a breach of any legal or equitable duty owed by Kosinski to plaintiff. Kosinski's actions did not tend to deceive, nor was the plaintiff deceived. Neither do the proofs support any tendency to deceive on the part of the deceased. The only reasonable conclusion, based on the plaintiff's allegations, appears to be that the deceased intended to provide for the plaintiff in a will but had not gotten around to doing so when death unexpectedly occurred. In effect, the trial court's disposition in favor of the plaintiff far exeeded her expectations of inheriting one-fourth interest in the estate of the deceased. The trial

court's determination of this issue was clearly erroneous. The issue to be decided by the trial court, based on the alleged promises of the deceased husband, should have been whether the plaintiff was entitled to receive the marital home, the identified personal property and a one-fourth interest in the residue of the estate.

V

DID THE CIRCUIT COURT ERR IN ADMITTING EVIDENCE REGARDING ALLEGED BUSINESS DEALINGS AND FINANCIAL RECORDS OF CHARLES SUMPTER?

Based on the record in this case, the substantial financial worth of the deceased was no more relevant than the nominal financial worth of the plaintiff. The plaintiff, as well as the deceased, was well aware of the disparity when agreeing not to have any designs on the property of the other as the antenuptial agreement provided. For the most part, the financial testimony and appraisals were of little evidentiary value. Portions of the Comerica Bank credit file, and particularly the newspaper clippings contained therein regarding Charles Sumpter's indictment, were inadmissible evidence. The trial court did not give this evidence much weight. We find that any error which may have occurred was harmless.

VI

DID THE CIRCUIT COURT ERR IN FAILING TO SUFFICIENTLY SET FORTH FINDINGS OF FACT AND CONCLUSIONS OF LAW?

MCR 2.517(A) provides:

(1) In actions tried on the facts without a jury or

with an advisory jury, the court shall find the facts
specially, state separately its conclusions of law,
and direct entry of the appropriate judgment.

(2) Brief, definite, and pertinent findings and
conclusions on the contested matters are sufficient,
without overelaboration of detail or particulariza-
tion of facts.

(3) The court may state the findings and conclu-
sions on the record or include them in a written
opinion.

In *Birkenshaw v Detroit,* 110 Mich App 500, 509;
313 NW2d 334 (1981), this Court held that "[m]ini-
mal compliance with the court rule is satisfactory,
provided it reveals the factual basis for the court's
ultimate conclusions."

In this case, the trial court's adoption of items
one through thirty-nine of plaintiff's brief, except
as modified or disputed, and the additional findings
made where facts were disputed placed an enor-
mous burden on appellate review in deciphering
what findings of fact were made by the trial court.
Appellate review was accomplished only after ex-
pending an enormous amount of time.

We reverse the trial court's decision and remand
this case for the trial court to determine whether
the deceased agreed to provide for the plaintiff in
a will, as contended and, if so, to determine
whether the plaintiff is entitled to receive the
marital home, the identified personal property,
and a one-fourth interest in the residue of the
estate.

Reversed and remanded. We do not retain juris-
diction.

R. C. ANDERSON, J., concurred.

BEASLEY, P.J. *(dissenting).* I respectfully dissent.
Defendants, Raymond A. Kosinski and Comerica

Bank, co-personal representatives of the estate of Charles L. Sumpter, deceased, appeal as of right from a judgment awarded in favor of plaintiff, Alana C. Sumpter, holding that an antenuptial agreement between plaintiff and Charles L. Sumpter, now deceased, was void.

On June 8, 1983, plaintiff signed, and on June 9, 1983, Charles L. Sumpter signed, an antenuptial agreement prepared by Raymond A. Kosinski, an attorney. Also on June 8, 1983, Alana C. Sumpter signed a statement consenting to being represented by Raymond A. Kosinski, although Kosinski had represented Charles L. Sumpter "for many years" and would represent Charles L. Sumpter as well as her in the matter of the antenuptial agreement. On June 9, 1983, the parties were married, she being around thirty years of age and he being around thirty-nine years of age. She was a college graduate, working as a trust officer for Manufacturer's National Bank, and he was an operator and part owner of a substantial nursing home. On August 17, 1983, Charles L. Sumpter died. He died testate, leaving his property under an earlier will that did not include provision for Alana. Plaintiff claims Sumpter had promised to change his will to provide for her. In December, 1983, plaintiff started this suit to have the antenuptial agreement declared void. Richard John Sumpter, Charles Lynn Sumpter, and Kipling Thomas Sumpter, children of Charles L. Sumpter by his earlier marriage, sought to intervene, but their motion was denied by the trial judge. However, after plaintiff won her lawsuit in the trial court, as above indicated, and defendants appealed, the motion to intervene by Richard John Sumpter, Charles Lynn Sumpter and Kipling Thomas Sumpter was granted, although their motion for peremptory reversal was denied.

Also pending on appeal to this Court, but the subject of a separate opinion, is Docket No. 91256, entitled "In the Matter of the Estate of Charles L. Sumpter, deceased, Richard T. Sumpter, appellant, versus Alana C. Sumpter and Raymond A. Kosinski, co-personal representatives of the Estate of Charles L. Sumpter, appellees," in which the probate judge entered an order removing Kosinski as personal representative of the estate.

After a six-day trial, the trial judge rendered an opinion from the bench, finding that the dual representation by Kosinski of both plaintiff and the decedent, Charles Sumpter, constituted constructive fraud and, thus, the antenuptial agreement was void. Indicating reliance on *In re Benker Estate*,[1] he found a great disparity between the assets of Charles L. Sumpter, which were valued as high as $2 million, and those of Alana C. Sumpter, which were valued under $100,000. He said that requesting plaintiff to sign the antenuptial agreement on the day before her wedding when very substantial sums of money were involved was "a short period of time" within which to consult counsel of her own choosing. He said that when one party does not have independent counsel and there is dual representation, the attorney has the highest obligation and duty to deal fairly with both parties, to deal evenly with both, to represent each party to the best of his ability and to fully disclose everything of importance. Noting that Kosinski had much stronger ties to Charles L. Sumpter and his family and their business than to plaintiff, Alana C. Sumpter, the trial judge said that, nevertheless, Kosinski was the biggest proponent of and urged the antenuptial agreement on Charles L. Sumpter. He believed

[1] 416 Mich 681; 331 NW2d 193 (1982).

that Kosinski was "loyal" to Charles L. Sumpter
and did *not* fully and vigorously represent Alana
C. Sumpter. He mentioned that Kosinski refused
to show Alana the executed last will and testa-
ment of Charles L. Sumpter, presumably then in
effect. He called the antenuptial agreement harsh
to Alana and emphasized her reluctance to sign.
He believed Charles L. Sumpter was an experi-
enced, sophisticated businessman, far more so than
Alana. He then concluded the antenuptial agree-
ment was unfair, inequitable and unreasonable.

In the antenuptial agreement, property of
Charles L. Sumpter was listed with estimated
values in the vicinity of $2 million. The property
of Alana C. MacDonald (now Alana C. Sumpter)
was also listed with estimated values of around
$50,000. In consideration of their intended mar-
riage, each party released all rights in the prop-
erty of the other, except as provided in the ante-
nuptial agreement. The agreement provided that if
the parties were married and living together as
husband and wife at the time of his death, she
would receive the marital home in which they
were then living, provided she was responsible for
and paid off any mortgage or other claims that
might exist against the home. The parties further
agreed that, in the event of the death of either,
the other party would accept "the terms and provi-
sions" under the will in full settlement.

As indicated, defendants Raymond A. Kosinski
and Comerica Bank, co-personal representatives of
the estate of Charles L. Sumpter, appeal as of
right. Permitted to intervene, Richard John Sump-
ter, Charles Lynn Sumpter and Kipling Thomas
Sumpter, children of Charles L. Sumpter and in-
tervening appellants, also appeal as of right. On
appeal, appellants raise five issues.

First, appellants claim that the circuit court

erred in holding that the antenuptial agreement was void. In his opinion, the trial judge placed reliance on *Benker, supra,* where the Supreme Court held that an antenuptial agreement must be based on fair disclosure of assets to be valid. In the within case, plaintiff did not plead a nondisclosure of assets. Consequently, the within case is not on "all fours" with *Benker* and is not controlled by *Benker.*

In *Benker,* the Supreme Court said that when certain factors are present, a rebuttable presumption of nondisclosure will be created. Those factors were: (1) the lack of any provision for the widow in the agreement; (2) the fact that the deceased husband had a very ample estate compared to the widow's estate; (3) the modest life style of the decedent husband and the lack of any outward appearance of wealth; (4) the fact that there was no indication, in general or in specific terms, that either party was informed as to the property interest of the other; (5) the lack of independent counsel representing the widow; (6) the fact that the attorney who drafted the agreement could only testify as to his normal procedure, which included a discussion of assets, but did not include the disclosure of undisclosed assets; and (7) the fact that the scrivener testified that he was not concerned with what the widow would get. In dicta, the *Benker* Court also said:

> In order for an antenuptial agreement to be valid, it must be fair, equitable, and reasonable in view of the surrounding facts and circumstances. It must be entered into voluntarily by both parties, with each understanding his or her rights and the extent of the waiver of such rights.[2]

In the within case, the *Benker* factors were

---

2 *Id.* at 689.

applied in finding that the antenuptial agreement was invalid. The trial judge noted, however, that *Benker* was only being used as a guideline, because *Benker* dealt with the issue of nondisclosure of assets while, as indicated, the instant case did not allege nondisclosure. In fact, on the first day of trial he ruled on a motion in limine that evidence of nondisclosure of assets could not be introduced because it was not alleged by plaintiff. However, I do not believe it was error for the trial judge to consider the *Benker* factors as a guideline for determining whether the antenuptial agreement was "fair, equitable, and reasonable." Not only were the factors pertinent according to dicta in *Benker,* but the same factors were pertinent to determining whether there was constructive fraud and whether there was sufficient consideration.

Defendants argue that *Benker* stands for the proposition that antenuptial agreements are valid so long as fair disclosure of assets was made. However, antenuptial agreements are contracts and have always been analyzed under general principles of contract law.[3] *Benker* did not say that nondisclosure was the only ground for invalidating antenuptial agreements, but said that nondisclosure was an additional ground for invalidating antenuptial agreements because "[a]ntenuptial agreements give rise to a special duty of disclosure not required in ordinary contract relationships so that the parties will be fully informed before entering into such agreements."[4] Therefore, I do not believe it was error to give consideration to general principles of contract law or to accepted grounds for constructive fraud in deciding whether the antenuptial agreement was valid.

[3] *In re Hepinstall's Estate,* 323 Mich 322, 327-328; 35 NW2d 276 (1948).

[4] *Benker, supra,* p 689.

A trial court's factual finding will not be set aside unless clearly erroneous. Special deference is given to the trial court's assessment of the credibility of witnesses.[5] Unlike active fraud, and contrary to what defendants argue, constructive fraud does not require an intent to deceive. Constructive fraud has been defined as a breach of a legal or equitable duty that tends to deceive others, regardless of the moral guilt of the person committing the fraud.[6]

In the within case, the trial court considered the following factors: the disparity in net worth of plaintiff and Charles Sumpter; the time constraints under which plaintiff signed the antenuptial agreement; the understanding of plaintiff that she would be provided for by will; the prior representation of Charles Sumpter by Kosinski and their ongoing attorney/client relationship; the strong ties that Kosinski had to Charles Sumpter and his family by virtue of being named co-personal representative in Charles Sumpter's will and co-conservator for the beneficiaries of the will; the loyalty of Kosinski to Charles Sumpter; the harshness of the terms of the antenuptial agreement; the reluctance of plaintiff to sign the antenuptial agreement and her mention of a will, both of which should have created caution in Kosinski; and the relative sophistication of the parties. Based on all these factors, the trial court found that there had been constructive fraud.

The trial judge placed great emphasis on the impropriety of Kosinski's representing both plaintiff and Charles Sumpter, believing Kosinski's actions were clearly a breach of his duty to plaintiff.

[5] *Kroll v Crest Plastics, Inc,* 142 Mich App 284, 288; 369 NW2d 487 (1985).

[6] *Goodrich v Waller,* 314 Mich 456, 461-462; 22 NW2d 862 (1946), quoting 26 CJ, Fraud, §§ 3, 4, pp 1060-1061; see also *General Electric Credit Corp v Wolverine Ins,* 420 Mich 176; 362 NW2d 595 (1984).

Defendants also argue that Kosinski's failure to disclose to plaintiff the nature and extent of his relationship with Charles Sumpter should not have been considered because Kosinski was named a defendant in his capacity as personal representative and not individually. However, the basis of this suit was to have the antenuptial agreement declared void. While it was Kosinski's conduct that led to a finding of constructive fraud, Kosinski was not individually being held liable for fraudulent conduct. Therefore, I do not believe it was improper to consider Kosinski's breach of duty, even though he was not named individually as a defendant.

Defendants further argue that it was error to find for plaintiff on the "failure of condition" and "abandonment" counts of the complaint. Defendants' argument is first based on MCL 700.140(1); MSA 27.5140(1), which provides that a contract to make a will must be in writing. However, this provision applies to cases where a contract to make a will is sought to be enforced. Plaintiff herein was not attempting to enforce a contract to make a will. Plaintiff was attempting to have an antenuptial agreement declared void. Evidence of an agreement by Charles Sumpter to make a will was being used collaterally to attack the validity of the antenuptial agreement. Therefore, the writing requirement of MCL 700.140(1); MSA 27.5140(1) does not apply.

Next, defendants argue that, assuming Charles Sumpter did say he would provide for plaintiff by will, his statement was merely an expression of intent, which does not create a contractual agreement. However, although expressions of intent may not be contractual by themselves, they may be considered with all other circumstances in de-

termining that a contract has been made.[7] This would be a finding of the trial court that would not be disturbed unless clearly erroneous. Moreover, defendants confuse the distinction between enforcing a contract to make a will and using expressions of intent collaterally to invalidate the antenuptial agreement. There was no finding in this case that Charles Sumpter's expression of intent constituted a contract to make a will. Nor was there any allegation that such a contract was made.

Defendants also argue that the trial judge erroneously found for plaintiff on the "mistake of fact or law" count of the complaint. However, the trial court ruling was based on constructive fraud, which merely requires that there was a breach of an equitable or legal duty that tends to deceive another.[8] Therefore, since Kosinski breached his duty to plaintiff, her execution of the antenuptial agreement under the mistaken belief that she would be provided for by will was a proper additional ground for invalidating the antenuptial agreement.

Next, defendants argue that it was error to find for plaintiff on the "lack of consideration" count of the complaint. It is true, as defendants argue, that marriage is sufficient consideration to support an antenuptial agreement.[9] However, sufficient consideration and adequate consideration are two different issues. Saying that marriage is sufficient consideration means that marriage, by itself, can operate as the consideration necessary for formation of a contract. However, the consideration may be sufficient to form a contract yet inadequate in the sense that one party gave up much more than

---

[7] *Groening v McCambridge,* 282 Mich 135, 140; 275 NW 795 (1937).

[8] *Goodrich, supra; General Electric Corp, supra.*

[9] *Kennett v McKay,* 336 Mich 28, 30; 57 NW2d 316 (1953).

the other party. Adequacy of consideration is generally not questioned by the court unless consideration is so grossly inadequate as to shock the conscience of the court.

In this case, plaintiff's "lack of consideration" count is actually an allegation of inadequate consideration. Plaintiff alleged that Charles Sumpter had over $2 million in assets and an annual income in excess of $250,000. However, under the antenuptial agreement, plaintiff would apparently receive property with a value of less than $50,000. While this disparity in net worth between Charles Sumpter and plaintiff bore on the adequacy of consideration matter, it also was a factor in finding constructive fraud. As such, consideration of this factor was not improper because it pertained to the issue of whether Kosinski was adequately representing plaintiff's interests.

Second, defendants claim that the circuit court did not have subject matter jurisdiction. Intervening appellants argue that the validity of the antenuptial agreement was not merely "ancillary" to the settlement of the estate, but that it was the crux of the settlement of the estate. They reason that, therefore, the probate court had exclusive jurisdiction. They go on to contend that, since the probate court had already assumed jurisdiction over the estate of Charles Sumpter, the circuit court should not have exercised its jurisdiction.

In this case, defendant Kosinski, but not the intervening appellants, made a motion to transfer the matter to the probate court, which motion was denied. Plaintiff argues that intervening appellants are precluded from raising the subject matter jurisdiction issue on appeal before this Court because they did not timely appeal from the trial judge's order denying Kosinski's motion. However, even if intervening appellants had made no motion

in the trial court, they could still raise the subject matter jurisdiction issue on appeal because it may be considered at any stage of a proceeding. The actions of the parties cannot operate as a waiver of or consent to subject matter jurisdiction.[10]

The circuit court had subject matter jurisdiction over the instant case under MCL 600.605; MSA 27A.605, which provides:

> Circuit courts have original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state.

Exclusive jurisdiction is granted to the probate court by MCL 700.21; MSA 27.5021 as follows:

> The court has exclusive jurisdiction of all of the following:
> (a) Matters relating to the settlement of the estate of a deceased person, whether testate or intestate, who was at the time of death domiciled in the county or was at the time of death domiciled without the state leaving an estate within the county to be administered.
> (b) Trusts and trustees in the execution of wills and administration of estates of deceased persons.
> (c) Proceedings concerning the internal affairs of trusts including proceedings concerning the administration and distribution of trusts and the declaration of rights or the determination of other matters involving trustees and beneficiaries of trusts, including proceedings to:
> 
> \*   \*   \*
> 
> (d) Appointment of a guardian, limited guardian,

---

[10] *Goodman v Bay Castings Div of Gulf & Western Industries,* 49 Mich App 611, 625; 212 NW2d 799 (1973); see also *Hastings v Hastings,* 154 Mich App 96, 98-99; 397 NW2d 232 (1986).

or conservator in cases prescribed by law, resolution of any contested matter in respect to the estate or ward, and settlement of the estate.

If a matter is not one of exclusive jurisdiction, the probate court may exercise concurrent jurisdiction with other courts over matters that are ancillary to the settlement of an estate, such as those listed in subsections (a) through (k) of MCL 700.22; MSA 27.5022.

I do not find any Michigan cases deciding directly whether a claim contesting the validity of an antenuptial agreement is a "matter relating to the settlement of the estate of a deceased person" which would give the probate court exclusive jurisdiction. However, in *York v Isabella Bank & Trust*,[11] this Court had to decide whether the probate court had exclusive jurisdiction over claims against a personal representative of an estate. The first two claims in *York* involved mishandling of estate assets. This Court said that the probate court had exclusive jurisdiction. The third cause of action in *York* was for intentional infliction of emotional distress arising out of the mishandling of the estate. This Court said that the probate court had neither exclusive nor concurrent jurisdiction.

In *In re Kus Estate*,[12] this Court also held that a probate court has no jurisdiction over a breach of contract claim made by the personal representative of an estate. The breach of contract claim had nothing to do with administration of the estate, and a probate court does not become a court of general jurisdiction merely because an estate is involved. The probate court can only acquire juris-

---

[11] 146 Mich App 1; 379 NW2d 448 (1985).

[12] 136 Mich App 343; 356 NW2d 23 (1984).

diction when expressly granted it by statute. The personal representative in *Kus* brought the action against someone who purchased potatoes from the decedent and never paid for them.

The claim in the within case is based on contract, as was the claim in *Kus.* However, it is more closely related to the estate than the claim in *Kus,* because it affects the distribution of the estate. While it would seem that a claim affecting distribution of an estate might come under the exclusive jurisdiction of the probate court, that is not always so. MCL 700.22; MSA 27.5022 grants concurrent jurisdiction to circuit and probate courts over matters that would affect the distribution of an estate, such as construing a will or determining heirs. Therefore, since the probate court has not expressly been granted exclusive jurisdiction over claims attacking the validity of antenuptial agreements, and since the Legislature has granted concurrent jurisdiction over matters directly affecting the distribution of estates, I believe that the circuit court had jurisdiction over the instant case.

Plaintiff argues that this action is for reformation of the antenuptial agreement, which would be an equitable action over which the probate court has no jurisdiction.[13] Plaintiff's complaint does not request reformation; rather, it requests that the antenuptial agreement be declared void. In his opinion, the trial judge did characterize the relief he was granting as being based on the equitable grounds of constructive fraud. Therefore, the necessity of equitable relief is another reason for finding that the probate court does not have exclusive jurisdiction.

Intervening appellants argue that, according to

[13] *Van Etten v Manufacturers National Bank of Detroit,* 119 Mich App 277; 326 NW2d 479 (1982).

*In re Cain Estate,*[14] once a court acquires jurisdiction, its jurisdiction cannot be interfered with by another court. Intervening appellants argue that the probate court acquired jurisdiction over this case by virtue of the probate of Charles L. Sumpter's will. However, in *Cain,* an action was brought in probate court for removal of the personal representative. It was alleged that the personal representative failed to include a $25,000 bank account among the assets of the estate. The probate court decided that the bank account was not an estate asset, so that the personal representative had acted properly. An action was also filed in the circuit court, alleging that legal title to the bank account was with the estate. We held that the circuit court properly declined to exercise its jurisdiction because the probate court already had jurisdiction over the dispute.

Thus, *Cain* is clearly and easily distinguishable from the within case because, in *Cain,* the same issue was raised in both courts. In this case, the probate court's jurisdiction over the estate of Charles L. Sumpter, deceased, does not necessarily give it jurisdiction over all matters involving the estate. As the *Kus* Court said, the mere fact that an estate is involved will not necessarily vest jurisdiction in the probate court. For these reasons, I decline to find error in the assumption of jurisdiction by the circuit court.

Third, defendants claim that the circuit court erred in denying intervening appellants' motion to intervene. Intervening appellants have not made a timely appeal from the order denying intervention. MCR 7.204(A)(1) provides that appeals as of right must be taken within twenty-one days after entry of the order appealed from or after entry of an order denying a motion for new trial. The order

14 147 Mich App 615; 382 NW2d 829 (1985).

denying intervention was signed on March 23, 1984. No appeal was taken until January 27, 1986, when a motion to intervene was filed with this Court. Therefore, review of the circuit court order of denial is precluded.

Even if the issue were reviewable on appeal, the order denying intervention was not erroneous. GCR 1963, 209.1, now MCR 2.209(A), which was in effect when the motion to intervene was made, provided:

> .1 Intervention of Right. Anyone shall be permitted to intervene in an action
>
> (1) when a statute of this state or a court rule confers an unconditional right to intervene; or
>
> (2) by stipulation of all the parties; or
>
> (3) upon timely application when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant may be bound by a judgment in the action; or
>
> (4) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody or subject to the control or disposition of the court or officer thereof.

Intervention is a matter of discretion with the trial judge.[15]

In the within case, the guardian ad litem of Kipling Thomas Sumpter filed a motion to intervene in the circuit court proceeding, alleging that the minor's interests might not be adequately represented. After review, the trial judge found that there had been no showing that the minor's interests might not be adequately represented.

I do not find any abuse of discretion in his ruling. A personal representative has the duty to

[15] *Dudkin v Civil Service Comm,* 127 Mich App 397, 404; 339 NW2d 190 (1983).

protect the estate from unlawful demands.[16] This includes "the obligation to protect the estate against every demand that is not legally enforceable and against all doubtful claims and obligations. He should interpose against such claims every legal objection that industry and care can furnish."[17] The minor's interest as a beneficiary of the estate was to have the antenuptial agreement declared valid. There was no showing that defendants would not adequately represent the minor's interest.

I also believe that the trial judge was correct in finding that the guardian ad litem of the minor had no standing to intervene in circuit court. Probate Court Rule 202.1(b)(1), which was effective when the motion was made, provided:

> The court may, if it deems necessary, appoint a guardian ad litem to appear for and represent in the proceeding a minor, a protected person, or one who is or is alleged to be a legally incapacitated person or a developmentally disabled person.

The court rule was substantially the same in 1938 when our Supreme Court held that "the proceeding" applies to the probate court proceeding only. The probate court has no authority to appoint a guardian ad litem to represent a minor in a circuit court proceeding.[18] The guardian ad litem herein was appointed by the probate court to act on behalf of Kipling Thomas Sumpter in the probate estate proceedings of Charles L. Sumpter. He was, thus, given no authority to represent Kipling Thomas Sumpter in the circuit court. For these

[16] *In re Brack Estate,* 121 Mich App 585, 590; 329 NW2d 432 (1982).
[17] 31 Am Jur 2d, Executors and Administrators, § 180, p 102.
[18] *King v Emmons,* 283 Mich 116; 277 NW 851 (1938).

reasons, I conclude that the trial judge was correct in denying the motion for intervention because the guardian ad litem had no standing to intervene.

Fourth, defendants claim that the circuit court erred by failing to sufficiently set forth findings of fact and conclusions of law. I disagree. The trial judge's findings of fact were sufficient.[19]

Fifth, defendants claim that the circuit court erred in admitting evidence regarding alleged business dealings and financial records of Charles Sumpter. The trial judge admitted into evidence financial records of Charles Sumpter and of Fairlane Convalescent Home. In response to a motion in limine, while he said that evidence of the value of the estate was not relevant because nondisclosure of assets was not an issue, he also said plaintiff did allege lack of consideration based on the disparity of values between Charles Sumpter's assets and plaintiff's assets.

Defendants argue that since there was not any dispute that Charles Sumpter's estate was worth over $2 million, then the subject records became irrelevant. I do not agree. Since there was an issue with respect to the relationship between Charles Sumpter's assets and plaintiff's assets, the admissibility of these records became a matter within the sound discretion of the trial judge. While the question of admissibility may have been a close one, certainly there was not any error in admission of these records into evidence by the trial judge.

I believe that the other claims of error made by defendants are without merit and do not require reversal. Consequently, I would affirm the trial court's judgment.

---

[19] MCR 2.517(A); *Birkenshaw v Detroit,* 110 Mich App 500, 509; 313 NW2d 334 (1981).