**BOMARKO, INC., a Delaware corporation, David McClymont, Don Oppenhuizen and Michael Azzar, Plaintiffs,**

v.

**HEMODYNAMICS, INC., a Delaware corporation, Eugene Brown, Alan R. Blackman, Donald K. Cronin, Robert T. Frisa, David H. Lieberman, and Thomas F. O'Donnell, M.D., Defendants.**

No. 1:90–CV–947.

United States District Court, W.D. Michigan, S.D.

Sept. 1, 1993.

Jasper A. Cragwall, Jr., Warner, Norcross & Judd, Grand Rapids, MI, for plaintiff.

Alan E. Golomb, Mineola, NY, for defendants Hemodynamics, Cronin, Frisa & Lieberman.

Michael J. Beautyman, Beautyman Associates, Flourtown, PA, for defendant O'Donnell.

Michael A. Hanzman, Zack, Hanzman, Ponce & Tucker, PA, Miami, FL, for defendant Brown.

## MEMORANDUM OPINION

McKEAGUE, District Judge.

This case presents securities fraud claims under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and related Rule 10b-5, 17 C.F.R. § 240.10b-5; under § 20(a) of the 1934 Act, 15 U.S.C. § 78t(a); and under the common law. Plaintiffs allege essentially that they suffered losses when, misled by inaccurate representations about the financial health and prospects of defendant Hemodynamics, Inc., they purchased Hemodynamics stock at artificially high prices. Plaintiffs assert claims against Hemodynamics and all of its directors. Now before the Court are the motions for summary judgment of the "outside director" defendants, who disclaim personal involvement in the complained of misrepresentations.

### I.

### FACTUAL BACKGROUND

Defendant Hemodynamics is a Delaware corporation with its principal place of business in Boca Raton, Florida. It was incorporated in 1985 and began trading stock publicly in December 1986. At all times pertinent,

it was engaged in the business of developing, acquiring and exploring rights to technologies useful in medical equipment and devices.[1] During the relevant period, Hemodynamics was managed by a board of directors consisting of Eugene Brown, chairman of the board and Hemodynamics president; Alan R. Blackman, executive vice president;[2] Donald K. Cronin, treasurer and chief financial officer; Robert T. Frisa; David H. Lieberman; Thomas F. O'Donnell, M.D.; and Gary Wadler, M.D. All have been named as defendants in this action.[3]

Hemodynamics' major products were devices known as the AV–1000 and the Digital Myograph. The AV–1000 measures minute color/pressure changes in the blood circulatory system by employing a technology known as light reflection reography. The Digital Myograph provides data regarding neuromuscular integrity and the possible presence of soft tissue damage. During the first half of 1988, revenues from sales of these products increased dramatically. During this period, Hemodynamics began issuing news releases which proudly reported this success, made optimistic projections for continued sales increases and announced the development of new products. These positive releases continued into 1989, notwithstanding the occurrence of several events that spelled decline rather than expansion.

During the period December 1988 to December 1989, plaintiffs allegedly invested more than $550,000 in Hemodynamics common stock. They did so in reliance upon publicly disseminated information which allegedly overstated the company's financial condition and prospects and which failed to correct earlier projections that had become unrealistic. They contend the value of the stock purchased had fallen to less than $60,000 at the time the complaint was filed and that the stock is now practically worthless.

In count I of the complaint, plaintiffs allege defendants Hemodynamics, Brown, Blackman and Cronin directly and indirectly disseminated untrue statements in Hemodynamics public filings, publicly disseminated financial statements and press releases, and omitted to state material facts necessary in order to make the statements, in light of the circumstances under which they were made, not misleading. These misrepresentations were allegedly made for the purpose and with the effect of inducing investors to purchase common stock at inflated prices, in violation of § 10(b) of the 1934 Act and Rule 10b–5. In count II, all of the individual defendants are alleged to be jointly and severally liable for this wrongdoing as "controlling persons" of Hemodynamics under § 20(a) of the 1934 Act. Count III contains common law claims, alleging that defendants Hemodynamics, Brown, Blackman and Cronin perpetrated a fraud, and that defendants Frisa, Lieberman, and O'Donnell, through the failure to act, aided and abetted the same and worked a constructive fraud. In their motions for summary judgment, the remaining outside directors, defendants Frisa, Lieberman and O'Donnell, challenge all claims made against them and contend plaintiffs have failed to produce evidence that they had the requisite involvement and scienter to be liable under the controlling person, aiding and abetting, and constructive fraud theories.

## II.

### SUMMARY JUDGMENT STANDARD

 Defendants' motions for summary judgment ask the Court to evaluate the factual support for plaintiffs' claims. The Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Ind. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The standard for deter-

---

1. Chapter 11 bankruptcy proceedings were instituted against Hemodynamics on February 1, 1993, and further proceedings against it in this case are automatically stayed pursuant to 11 U.S.C. § 362.

2. Blackman replaced Brown as president from October 1988 to September 1989.

3. Blackman is only nominally a defendant in this action, having never been served with process. In addition, the claims against Gary Wadler, M.D., have been voluntarily dismissed per stipulation on February 10, 1993.

mining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10 (emphasis in original). If defendants carry their burden of showing there is an absence of evidence to support a claim, then plaintiffs must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). An issue of fact is "genuine" if the evidence is such that a reasonable jury could find for its proponent. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. An issue of fact concerns "material" facts only if establishment thereof might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of a claim necessarily renders all other facts immaterial. *Celotex, supra,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

## III.

### CONTROLLING PERSON LIABILITY

The Court accepts for present purposes that plaintiffs have stated a valid claim in count I for violation of § 10(b) and Rule 10b–5, as to which there remain genuine issues of material fact.[4] Although defendants Frisa, Lieberman and O'Donnell are not alleged to have directly participated in this violation, each of them may be liable as a "controlling person" if he directly or indirectly controlled a person who committed the violation, unless he acted in good faith and did not directly or indirectly induce the violation. 15 U.S.C. § 78t(a).

Each of the moving defendants was a director of Hemodynamics during the relevant period. Frisa and O'Donnell also comprised the audit committee. Lieberman is a partner in the Jericho, New York law firm Blau, Kramer, Wachtlar & Lieberman, P.C., that served as legal counsel to Hemodynamics. These titles and functions alone do not establish "controlling person" status. *Herm v. Stafford,* 663 F.2d 669, 684 (6th Cir.1981). "There must be some showing of actual participation in the corporation's operation or some influence before the consequences of control may be imposed." *Id.;* see also *Ballan v. Upjohn Co.,* 814 F.Supp. 1375, 1389 (W.D.Mich.1992); *In re Rospatch Securities Litigation,* 760 F.Supp. 1239, 1260 (W.D.Mich.1991). Further, there must be some showing of actual participation in the activities which allegedly violated the securities laws. *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1442 (9th Cir.1987). This culpable participation standard is met for purposes of this motion, by evidence that the "controlling persons" encouraged and permitted the issuance of statements they knew were false. *Ballan, supra,* 814 F.Supp. at 1389.

Plaintiffs contend the requisite participation and influence is made out by the following facts:

—Frisa and O'Donnell were members— the only members—of the audit committee;

—O'Donnell, Frisa and Lieberman regularly attended board meetings at which the status of Hemodynamics' sales and operations were reviewed;

—O'Donnell, Frisa and Lieberman were aware in late 1988 and early 1989 that AV–1000 sales had declined markedly, but did not publicly disclose this fact;

—O'Donnell had moved the board of directors—a motion seconded by Frisa and

---

**4.** This presumption arises (a) from the fact that the insider director defendants have not challenged the charge through motion for summary judgment, and (b) from the inferences that may reasonably be drawn upon reviewing the press releases issued by Hemodynamics in light of the subsequent decline of the corporation.

supported by Lieberman—to issue a letter to Hemodynamics' shareholders in January 1989, refuting an unfavorable article that had appeared in the December 16, 1988 issue of *Barron's* Magazine, to bolster investor confidence;

—O'Donnell, Frisa and Lieberman supported the decision to announce a buy-back of up to 500,000 shares of stock by Hemodynamics to bolster investor confidence; but did not later disclose that less than 60,000 shares were actually repurchased;

—O'Donnell, Frisa and Lieberman knew that Hemodynamics' limited financial resources handicapped marketing of its products, but did not publicly disclose this problem;

—O'Donnell, Frisa and Lieberman knew Hemodynamics' accounts receivable were overstated, as a result of a dispute with dealers of the AV–1000, but did not publicly disclose this problem;

—Lieberman reviewed and approved substantially all press releases issued on behalf of Hemodynamics by the public relations firm, Financial Medial Group, Inc., many of which contained misleading information;

—Lieberman assisted in drafting a letter, dated March 14, 1989, and signed by defendant Blackman, in response to a formal inquiry by the Securities and Exchange Commission ("SEC"), which letter allegedly contains misleading information.

Defendants have successfully rebutted the impression that O'Donnell's and Frisa's membership in the audit committee placed them in a position of control. The deposition testimony of both men indicates that they became the audit committee "by default;" not because of any expertise in accounting matters, but because they were the only directors eligible, by virtue of their outside director status. Further, it appears that no formal meetings of the audit committee were conducted during 1988 and 1989. Although O'Donnell and Frisa communicated with each other informally and participated in review of an April 1, 1989 letter from the outside auditors, the accounting firm, Laventhol & Horwath, it appears the audit committee, *per se,* played no significant role in the management of the corporation or in the dissemination of information here said to be misleading.

Neither does the defendants' regular attendance at board meetings indicate in itself that they culpably participated in the issuance of false statements. O'Donnell was recruited to serve as a director because of his expertise in venous disease and vascular surgery, and his professional interest in the technologies Hemodynamics was developing. He understood his role to be one of providing medical expertise and advice. He relied on the expertise of others with respect to matters of accounting, sales and marketing, and legal correctness. Similarly, Frisa, who became a director at Blackman's invitation, to offer expertise with respect to sales and marketing, attests in his affidavit that he relied on others to verify the accuracy and propriety of SEC filings and press releases. In fact, correspondence indicates that during the course of 1989, notwithstanding their attendance at board meetings, O'Donnell and Frisa became concerned about the lack of information made available to them by the inside directors and about their proper roles as directors. This manifest concern undermines the impression that they were, by virtue of their attendance at board meetings, privy to "the bigger picture," knowledge of which might have exposed issued statements as potentially misleading. Further, while Lieberman's attendance at board meetings does not in itself indicate culpable participation, his role as legal counsel who reviewed and approved SEC filings and press releases does raise significant concerns, addressed *infra.*

That the moving defendants were undisputedly aware of the AV–1000 sales downturn in late 1988 and early 1989, says nothing about their "control" *per se.* To the extent that their silence in the face of that knowledge could be construed as reflecting culpable participation, the impression is satisfactorily dispelled. The most recent press releases touting the strong sales of the AV–1000 were issued in July and August, 1988. Frisa explains that the board perceived no duty to report or explain the gradual decline in sales during the third and fourth quarters of 1988, because the decline coincided roughly with

Hemodynamics' announcement that a superior product, the AV–2000, was being developed and would be marketed in the first quarter of 1989. The decline, thus, was not viewed as reflecting adversely on Hemodynamics' financial health and prospects. This explanation is reasonable and undercuts the possible inference that defendants shirked a *duty* to apprise the public of the sales downturn.

That the moving defendants actively participated in the decision to issue a letter to shareholders in January 1989, evinces some measure of "control." However, the content of the letter, representing a general response to the critical *Barron's* article, does not appear, on its face or in reasonable implication, to be untrue or misleading. The letter simply calls the *Barron's* criticism "unfair" and professes the board's confidence in Hemodynamics' ability to continue delivering medical products for which there was an acute need, a confidence which all three moving defendants claim to have genuinely shared at that time. The letter does not evidence culpable participation in the issuance of false statements.

■ In January 1989, Hemodynamics also announced approval of purchase by the company of "up to 500,000 of its outstanding common shares." This release is said to have been rendered misleading when less than 60,000 shares were actually repurchased. Yet, the facts are not inconsistent with the language of the release. Moreover, this charge focuses not on a false statement that the outside directors encouraged and permitted—for there is no evidence that any of them knew or supposed that the release was false when issued—but on their failure, through their silence, to correct a misunderstanding that could have arisen from the release. The Court acknowledges that a public statement, correct when issued, may become materially misleading in light of subsequent events, which effect may create a duty to update. See *Kirby v. Cullinet Software, Inc.*, 721 F.Supp. 1444, 1450 (D.Mass. 1989). This release, issued for the very purpose of bolstering investor confidence may arguably have become materially misleading. However, there is no evidence that O'Donnell

and Frisa, who undisputedly did not generally participate in decisions concerning releases, encouraged, permitted or in any way participated in a decision not to issue a clarifying statement. On the other hand, defendant Lieberman was more involved in the process surrounding issuance of releases. It was the custom of legal counsel to review and approve all proposed releases. Inasmuch as Lieberman has not specifically refuted this charge, the Court must conclude that genuine issues of fact remain, arising from inference, as to whether he culpably participated in a decision not to clarify.

Plaintiffs' charge that defendants were obliged to affirmatively disclose weaknesses in Hemodynamics' ability to market new products, in contrast to the foregoing charge, arises in a vacuum. That is, there appears to have been no public statement that arguably rendered silence concerning marketing difficulties materially misleading. Contrarily, Hemodynamics' experience with the AV–1000 had demonstrated successful introduction of a new product in spite of limited marketing resources. Thus, there appears to be no factual premise for the asserted duty to disclose these weaknesses, and no evidence that the moving defendants participated in a decision not to disclose.

There is no dispute that Hemodynamics made adjustments in reporting of its accounts receivable. The evidence is uncontroverted that this matter was addressed primarily by defendant Cronin, chief financial officer, with the outside auditors, Laventhol & Horwath. There is no evidence that the moving defendants participated in any way concerning reporting of the accounts receivable, no evidence that they were not entitled to rely on the advice of Laventhol & Horwath, and no evidence that the resolution recommended by Laventhol and Horwath, and adopted by Hemodynamics, was anything but proper.

■ Finally, defendant Lieberman admits that he, as legal counsel, reviewed and approved most press releases issued by Hemodynamics and assisted in drafting the March 1989 letter to the SEC. These activities constitute the requisite participation in activities which allegedly violated securities

laws to facially establish that Lieberman was a "controlling person." Lieberman steadfastly disclaims encouraging and permitting issuance of statements that he knew were false, and he may indeed have justifiably relied on representations of inside directors. Nonetheless, reasonable inferences arising from review of these statements—especially those concerning development and marketing of new products—in view of the subsequent decline of Hemodynamics, create genuine issues of fact concerning Lieberman's involvement that cannot be resolved via summary judgment.

Accordingly, the Court concludes that defendants O'Donnell and Frisa are entitled to summary judgment in their favor on plaintiffs' claim that they are liable as controlling persons. Defendant Lieberman's motion for summary judgment in this regard must, however, be denied.

## IV.

### AIDING AND ABETTING LIABILITY

■ The analysis of plaintiffs' aiding and abetting theory of liability takes a similar course. The parties agree that the following standard applies:

> [A] person may be held as an aider and abettor only if some other party has committed a securities law violation, if the accused party had general awareness that his role was part of an overall activity that is improper, and if the accused aider-abettor knowingly and substantially assisted the violation.

Securities & Exchange Comm'n v. Coffey, 493 F.2d 1304, 1316 (6th Cir.1974), cert. denied, 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837 (1975). See also Molecular Technology Corp. v. Valentine, 925 F.2d 910, 917–18 (6th Cir.1991); Moore v. Fenex, Inc., 809 F.2d 297, 303 (6th Cir.), cert. denied 483 U.S. 1006, 107 S.Ct. 3231, 97 L.Ed.2d 737 (1987). The third of these elements must be given particularly exacting analysis in cases such as this, where the alleged "representations" consist primarily of non-disclosure. Moore, supra, 809 F.2d at 303.

> The plaintiffs must show that the silence of the accused aider and abettor "was con-

sciously intended to aid the securities law violation," and must prove either a culpable state of mind, or conduct from which a culpable state of mind can be inferred.

Id., at 303–04 (quoting from Securities & Exchange Comm'n v. Washington County, 676 F.2d 218, 226 (6th Cir.1982).

■ This standard is thus roughly equivalent, for present purposes, to that ultimately employed above in determining controlling person liability. Consistent with the foregoing analysis, therefore, the Court concludes plaintiffs have not presented evidence creating a genuine issue as to whether defendants O'Donnell and Frisa assisted in the issuance of misleading public statements with a culpable state of mind. The evidence in this regard with respect to defendant Lieberman is also thin, but is sufficient to withstand summary judgment simply because of inferences that arise from discharge of his duties as legal counsel.

## V.

### CONSTRUCTIVE FRAUD

■ Constructive fraud, under Michigan law, is the breach of a legal or equitable duty that tends to deceive others, regardless of the moral guilt of the person committing the fraud. Sumpter v. Kosinski, 165 Mich. App. 784, 804, 419 N.W.2d 463 (1988). Relief is warranted under this theory where the loss of the party deceived resulted in unmerited benefit to the one who breached his duty. Goodrich v. Waller, 314 Mich. 456, 467–70, 22 N.W.2d 862 (1946).

■ Because no evidence has been presented to support a finding that the moving defendants benefitted personally and directly from the alleged misrepresentations, this claim must be dismissed with respect to all three defendants.

## VI.

### CONCLUSION

Based on the premises, the Court concludes that defendant O'Donnell's and defendant Frisa's motions for summary judgment must be granted in toto. Defendant Lieber-

man's motion for summary judgment will be granted with respect to the constructive fraud claim only, and denied with respect to plaintiffs' claims based on theories of controlling person and aiding and abetting liability. An order consistent with this opinion shall issue forthwith.

### ORDER OF THE COURT

In accordance with the Court's memorandum opinion of even date,

**IT IS HEREBY ORDERED** that the motions for summary judgment of defendants Thomas F. O'Donnell, M.D., and Robert T. Frisa are **GRANTED.** They are hereby **AWARDED JUDGMENT** in their favor and all claims against them are **DISMISSED.**

**IT IS FURTHER ORDERED** that the motion of defendant David H. Lieberman is **GRANTED in part** and **DENIED in part.** Defendant Lieberman is hereby **AWARDED JUDGMENT** in his favor with respect to the constructive fraud claim contained in count III of plaintiffs' complaint, which claim is hereby **DISMISSED.** His motion for summary judgment with respect to plaintiffs' claims based upon controlling person liability under 15 U.S.C. § 78t(a) and based upon allegations of aiding and abetting the commission of fraud are **DENIED.**