David R. YADLOSKY, individually and on behalf of all persons similarly situated, Plaintiff,

v.

GRANT THORNTON, L.L.P. et al., Defendants.

No. 99–CV–60465–AA.

United States District Court, E.D. Michigan, Southern Division.

March 21, 2000.

Michael P. Marsalese, Bloomfield Hills, MI, for David R. Yadlosky.

Thomas F. Cavalier, John A. Libby, Sharon M. Woods, Barris, Sott, Detroit, MI, Larry K. Elliott, Cohen & Grisgsby, Pittsburgh, PA, for Grant Thornton, LLP.

Rodger D. Young, Steven C. Susser, Young Assoc., Southfield, MI, for Doeren Mayhew and Company, PC.

Joseph H. Spiegel Southfield, MI, Dennis K. Egan, Egan & Mazarra, Troy, MI, for Sigma Financial Corporation.

William K. Holmes, Melvin G. Moseley, Jr., Brian J. Masternak, Warner, Norcross, Grand Rapids, MI, for Vestax Securities Corporation.

David S. Snyder, Southfield, MI, for Gregory J. Schwartz and Company, Incorporated.

Gary M. Saretsky, Hertz, Schram, Bloomfield Hills, MI, for Equitas America, L.L.C., Apex Capital, L.L.C.

Gary M. Saretsky, Hertz, Schram, Bloomfield Hills, MI, Peter J. Anderson (pending app)., Kristen Jones Indermark (not admitted), Sutherland, Asbill, Atlanta, GA, for Proquities, Incorporated.

Steven M. Wolock, Maddin, Weiner, Southfield, MI, Harvey R. Heller, Marjorie S. Hensel, Maddin, Hauser, Southfield, MI, for Centennial Capital Management.

Gerald W. Van Wyke, Feikens, Stevens, Detroit, MI, for Seger Financial, Incorporated.

Michael P. Coakley, Thomas R. Cox, Miller, Canfield, Detroit, MI for Mariner Financial Services, Incorporated.

Phillip J. Shefferly, Shefferly & Silverman, West Bloomfield, MI, William H. Horton, Linda Watson, Michael R. Turco, Cox, Hodgman,Troy, MI, for Mutibank Securities Incorporated.

Joanne F. Ross, Urso Assoc., Detroit, MI, for Thomas P. Cronin.

Stephen M. Gross, Lindahl, Gross, Bingham Farms, MI, for Lee P. Wells.

Patrick E. Cafferty, Miller, Faucher, Ann Arbor, MI, for MCA Group.

Jerome G. Quinn, Bloomfield Hills, MI, for David Beane, John J. Bachor, Stanley Reuter, Marilyn Reuter, Renee Citron-Reuter, Lewis Underhill, III, Hubert Beudert.

Anthony V. Trogan, Jr., Weisman, Trogan, Bingham Farms, MI, for Spadafore Group.

## ORDER GRANTING DEFENDANTS GRANT THORNTON, L.L.P.'S AND DOEREN MAYHEW & CO., P.C.'S MOTION TO DISMISS

STEEH, District Judge.

Defendants Grant Thornton, L.L.P. and Doeren Mayhew & Co., P.C. move to dismiss plaintiff David Yadlosky's several state and federal claims related to securities fraud. For the reasons set forth below, defendants' motions for dismissal will be GRANTED.

## COMPLAINT

Plaintiff filed a thirteen count second amended complaint on January 3, 2000 alleging defendants Grant Thornton, L.L.P. ("GTLLP") and Doeren Mayhew & Co., P.C. ("DM & C") are certified public accounting firms that acted as auditors for the MCA Financial Corporation ("MCA") between January 1, 1986 and January 28, 1999 when MCA securities were sold to approximately 2811 investors. Plaintiff alleges these securities consisted of series "A" and series "B" preferred stock, shares in limited partnerships, 11% corporate bonds, and "pass-through-pool" certificates. Plaintiff alleges the several defendants, including defendants GTLLP and DM & C, willfully and/or recklessly disseminated false and misleading statements about the financial condition of MCA, inducing investors to purchase overvalued MCA securities. Specifically as to GTLLP and DM & C, plaintiff alleges these independent auditors certified false and misleading MCA financial statements as well as 10–K and 10–Q reports filed with the Securities and Exchange Commission. Plaintiff also alleges GTLLP and DM & C failed to comply with generally accepted accounting principles ("GAAP") and Generally Accepted Auditing Standards ("GAAS"). Plaintiff further alleges GTLLP and DM & C facilitated and participated in MCA's alleged scheme to defraud investors, knowing that various financial documents were materially false and misleading. Plaintiff alleges twelve counts against GTLLP and DM & C: violations of the Securities and Exchange Act of 1934, § 10(b), 15 U.S.C. § 78j(b), Rule 10b–5, 17 C.F.R. § 240.10b–5, as promulgated thereunder, and § 20(a) of the Act, 15 U.S.C. § 78t(a) (Counts I and II), breach of fiduciary duty and co-conspiracy (Count III), common law fraud (Count IV), negligent misrepresentation (Count V), suppression of truth (Count VI), deceit (Count VII), negligent and wanton supervision (Count VIII), violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* (Count X), state securities fraud in violation of M.C.L. § 451.501 and M.C.L. § 451.810 (Counts XI–XII), and third-party beneficiary liability for breach of contract in avoidance of Michigan's Accountant Liability Act, M.C.L. § 600.2961. Defendants now move for dismissal of each count.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a claim on an issue of law. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering a Rule 12(b)(6) motion, a court must "accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief." *G.M. Engineers and Associates, Inc. v. West Bloomfield Tp.,* 922 F.2d 328, 330 (6th Cir.1990).

## ANALYSIS

### I.

#### Federal Claims

##### A.

*§ 10(b), Rule 10b–5, and § 20(a) Claims*

Defendants GTLLP and DM & C argue they are entitled to the dismissal of plaintiff's § 10(b) and Rule 10b–5 security fraud claims because plaintiff has not plead securities fraud with the specificity required by the Private Securities Litigation Reform Act, 15 U.S.C. § 78u–4, *et seq.* ("PSLRA"), and Federal Rule of Civil Procedure 9(b). Defendants also argue they cannot be held liable under § 20(a) because plaintiff's allegations do not support a requisite finding that they, as independent auditors, were "controlling persons" of MCA.

i.

To state a securities claim under § 10(b) and Rule 10b–5, the plaintiff must allege a misrepresentation of material fact with respect to the purchase or sale of a security, scienter on the part of the defendant, the plaintiff's reliance on the misrepresentation, and proximately caused damages. *In re Comshare, Inc. Securities Litigation,* 183 F.3d 542, 548 (6th Cir.1999) (citing *Aschinger v. Columbus Showcase Co.,* 934 F.2d 1402, 1409 (6th Cir.1991)). As amended in 1995, the PSLRA provides:

(1) Misleading statements and omissions

In any private action arising under this chapter in which the plaintiff alleges that the defendant—

(A) made an untrue statement of a material fact; or

(B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;

the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, *if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.*

(2) Required state of mind

In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, *state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.*

15 U.S.C. § 78u–4(b)(1–2) (emphasis added). A district court may dismiss the complaint if the pleading requirements of 15 U.S.C. § 78u–4(b)(1–2) are not met. *See* 15 U.S.C. § 78u–4(b)(3).

Rule 9(b) requires that "the circumstances constituting fraud ... shall be stated with particularity." Fed.R.Civ.P. 9(b). The pleading requirement of Rule 9(b) has three purposes: (1) it provides the defendants with fair notice of the claims alleged against them; (2) it protects defendants from harm to their reputations or goodwill caused by unfounded fraud allegations, and; (3) it reduces the number of strike suits and discourages fishing expeditions. *See In re Credit Acceptance Corp. Securities Litigation,* 50 F.Supp.2d 662, 671 (E.D.Mich.1999).

■ Consistent with the PSLRA and Rule 9(b), the Sixth Circuit holds that, in addition to meeting the scienter element of a securities fraud claim by pleading intentional misconduct, "plaintiffs may plead scienter in § 10b or Rule 10b–5 cases by alleging facts giving rise to a strong inference of recklessness, but not by alleging facts merely establishing that a defendant had the motive and opportunity to commit securities fraud." *Comshare,* 183 F.3d at 549. "Recklessness" represents "highly unreasonable conduct which is an extreme departure from the standards of ordinary care" where the resulting harmful consequence is "at least ... so obvious that any reasonable man would have known of it." *Id.* at 550. Merely failing to follow GAAP is insufficient to state a securities fraud claim. *Id.* at 553. *See also In re Worlds of Wonder Securities Litigation,* 35 F.3d 1407, 1426 (9th Cir.1994) (stating: "The [plaintiff] must prove that the accounting practices were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts.") Federal securities fraud claims cannot rest upon speculation or conjecture. *Id.* at 553.

In *Comshare,* the defendant auditors allegedly violated GAAP and their clients'

own policy of recognizing revenue only after a product was shipped and the bill was paid. *Comshare*, 183 F.3d at 546. The *Comshare* auditors allegedly recognized $ 4.0 million of conditional orders which, upon public disclosure, caused stock prices to drop from 18½ to 11⅞ in one day. *Id.* at 546. The *Comshare* plaintiff's § 10(b) and § 20(a) claims alleged that the auditors knowingly or recklessly disregarded revenue recognition errors, fraudulently inducing investors to purchase overvalued stock. *Id.* at 547. The *Comshare* court dismissed the federal securities fraud claims, finding that the allegations alleged only the auditors' motive and opportunity to commit fraud—receipt of higher compensation and the opportunity to sell stock at an inflated price—not facts supporting a strong inference of scienter. *Id.* at 551, 553. "[T]heir allegations rest on mere 'information and belief,' and cannot support a strong inference of scienter." *Id.* at 553.

In his second amended complaint, plaintiff Yadlosky alleges:

110. Defendants were motivated to conceal the true state of MCA operations in order to, among other things:

a. Allow the Individual Defendants to continue receiving outrageous salaries, bonuses, expense accounts and most importantly, related loans.

b. Allow the Defendant Accounting Group to earn substantial fees associated with their preparation, review, auditing, and other activities undertaken by them on behalf of MCA.

c. Allow the Defendant Broker–Dealer Group to continue to earn substantial fees and commissions associated with their preparation, review, and distribution of the pass-through-pools and other activities on behalf of MCA;

d. Allow MCA to pay over $127,580.00 for charge card expenses for Defendant Patrick Quinlan;

e. Allow MCA to pay over $57,267.00 for maintaining condominiums for Defendants Patrick Quinlan and Lee P. Wells;

f. Allow MCA to pay over $15,547.00 for luxury items such as a private boat for Defendant Patrick Quinlan and luxury automobiles such as a Mercedes 500 SL, two late model Cadillacs and two late model Jeep Grand Cherokees for its executives; and

g. Allow MCA to pay over $1,000,000.00 in consulting services to five relatives of Defendants Patrick Quinlan and Lee P. Wells.

111. That the Defendants acted with scienter and recklessness, relative to their actions involving the related party transactions and the treatment of accounts receivables in the April 28, 1998 Report of Independent Certified Public Accountants as well as the 1996 and 1997 Reports (hereinafter referred to as "revenue recognition"). The Defendants knowingly and intentionally deceived, manipulated and defrauded the Plaintiff and other members of the Class relative to the true financial condition of MCA, including without limitations the "revenue recognition". The April 28 Report of Independent Certified Public Accountants states:

*NOTE 8—RELATED PARTY TRANSACTIONS*

*The Company purchased various real estate parcels during the years ended January 31, 1998, 1997 and 1996. These parcels purchased from unrelated third parties were subsequently sold to limited partnerships, for which PCA is the general partner. Gains totaling $34,249,557, $8,247,201 and $6,529,708 for the years ended January 31, 1998, 1997 and 1996 were recognized on the sales, respectively.*

*During the years ended January 31, 1998, 1997 and 1996 the Company agreed to pay commissions of $1,689,-600, $1,968,000 and $1,735,000, respectively for the acquisition of properties*

acquired from unrelated third parties to a Company owned by three shareholders of MCAFC. These commissions reduced "Gain on Sale of Real Estate" in the Consolidated Statements of Income.

MCA earned $36,000 for management fees for administrative services provided to U.S. Mutual Financial Corporation (USMFC) during each of the years ended January 31, 1998; 1997 and 1996, respectively. Certain shareholders of the Company are directors or major shareholders in USMFC.

Included in other income is $300,000 and $83,000 for 1998 and 1997, respectively, attributable to rental charges made to an entity controlled by certain board members of The Company which utilizes a portion of the Company's office space. During the years ended January 31, 1998 and 1997, the Company and certain affiliated companies entered into real estate and financing transactions with Detroit Revitalization, Inc. (DRI).

Included in accounts payable—related parties at January 31, 1998 and 1997 are approximately $922,000 and $1,044,000 attributable to transactions with partnerships, trusts and other related entities. Such transactions include rental payments received on behalf of these entities and disbursed in subsequent months.

DRI is a not-for-profit corporation formed in 1994 to assist in the revitalization of Detroit's housing stock. During the year, the Company sold the homes to DRI for a gross selling price of approximately $14,000,000 ($3,600,000 in 1997), realizing net gains of $539,000 ($705,000 in 1997). Included in accounts receivable other at January 31, 1998 is $1,100,000 which is due from DRI. Included in other income for the year ended January 31, 1998 is $980,000 ($120,000 on January 31, 1997) of real estate commissions earned by the Company in connection with DRI's sales of homes to individuals. The Chairman of the Board of DRI functions as a consultant to the Company and is also a member of the Board of USMFC.

The April 28, 1998 Report of Independent Certified Public Accountants expressly includes the deliberately reckless definition of account receivables as follows:

Accounts receivable—related parties consist mainly of non-interest bearing advances and other administrative charges to Investor Pass-through Trusts and limited partnerships sponsored by the Company, and other related entities. Included in accounts receivables—related parties at January 31, 1998 and 1997, respectively, are approximately $934,000 and $571,000 due from an entity owned by certain directors and shareholders of the Company; $1,265,000 and $1,674,000 due from Property Corporation of America (PCA), an entity owned by certain directors and shareholders of the Company, and $3,170,000 and $3,384,000 due from investor pass-through trusts and limited partnerships is substantially dependent upon successful syndication of partnership interests and operating cash flows generated by rental operations. Also included in accounts receivable related parties at January 31, 1998 is approximately $1,000,000 attributable to real estate transactions entered into with Detroit Revitalization, Inc.

The Company uses the allowance method to account for possible losses of accounts receivable, and no allowance was deemed necessary at January 31, 1998 and 1997.

112. The Defendants intentional and unreasonable conduct relative to the "revenue recognition" issue, which is an extreme departure from the standards of ordinary care, clearly establishes their scienter as well as their recklessness towards Plaintiff and other Class members . . . . .

114. That the Defendants made negligent misrepresentations regarding

MCA's financial condition, including without limitations, the "revenue recognition" issue and this reckless behavior is an extreme departure from the standards of ordinary care, clearly establishes their scienter as well as their recklessness towards Plaintiff and other members of the Class.....

116. That the "revenue recognition" was a "red flag", which should have placed the Defendant Accounting Group on notice and thereby requiring full disclosure of this situation. That Defendant Accounting Group intentionally failed to follow proper audit procedures, that these GAAP violations led to material misstatements and that the Defendant Accounting Group intentionally ignored "red flags".....

124. That Defendant Accounting Group knew or should have known that the "revenue recognition" formulas were an erroneous depiction of the true financial condition of MCA and that the appropriate procedure under GAAP would have been to fully disclose the condition and not bury this condition it in [sic] the footnotes.

125. That the Defendant Accounting Group's shoddy accounting practices were so deficient that the reviews and audits amounted to no review or audit at all. They had an affirmative duty to design an audit system, which would provide a reasonable assurance of detecting illegal acts that have a direct and material effect on MCA's financial condition, however, they failed to design such a system.

126. That the Defendant Accounting Group's accounting practices were so deficient that the reviews and audits amounted to an egregious refusal to see the obvious. When the Defendant Accounting Group obtained information, which they knew was illegal, they failed to evaluate the potential effect on MCA's financial condition and statements; and in the event that they did evaluate the potential effect on MCA's

financial condition and statements, they failed to properly account for or disclose these evaluations in the financial statements or express a qualified or adverse opinion.

127. That the Defendant Accounting Group's accounting practices were so deliberately reckless that the accounting judgments, which were made, were such that no reasonable accountant would have made the same decisions if confronted by the same facts nor did they disclose the fact that many of MCA's properties were illegally pledged as collateral for more than one party.

. . . .

129. That the Defendant Accounting Group's accounting practices were so deficient that the reviews and audits amounted to highly unreasonable conduct amounting to an extreme departure from the standards of ordinary care, which failed to disclose that cash proceeds raised from various pass-through-pools were utilized by MCA in its general purpose fund and not credited to investor accounts or particular pool resources.

130. That the Defendant Accounting Group's accounting practices were so deliberately reckless that they consciously disregarded "red flags" that would have revealed the true financial condition of MCA, including without limitations, the reckless "revenue recognition" formulas, which resulted in issued reports, which stated that the financial condition of MCA was healthy and that revenues and profits were growing at a strong rate.

131. That the "revenue recognition" formulas were not an obscure fraudulent scheme but was rather an obvious attempt by the Individual Defendants and the Defendant Accounting Group to materially misrepresent the true financial condition of MCA from the Plaintiff and other members of the Class, including the following deliberate reckless actions:

 a. Failed to disclose the overlapping and intertwined relationship between

the various MCA related entities and the effect that their intercompany loans had on the solvency of the entities;

b. Failed to design or implement an audit system for such intercompany relationships, which would lead to the discovery and reporting of material information relative to MCA's true financial condition;

c. Failed to design or implement an audit system, which would detect fraud, which would have an effect on the financial reports and audits being issued in order to avoid the material misstatements, which are contained in MCA's financial statements for the years 1996, 1997 and 1998.

d. Failed to design and/or implement an audit system to uncover any improper activities on behalf of the officers and directors of MCA or related entities of MCA;

e. Failed to disclose the misappropriation of funds and other assets of MCA by its related entities and officers and directors;

f. Failed to disclose MCA [sic] illegal intercompany activities; and

g. Failed to disclose the possibility of MCA not remaining a viable entity in the event that the intercompany related loans were not satisfied.

January 3, 2000 Second Amended Complaint, at 43–50.

█ The fatal deficiency in plaintiff Yadlosky's second amended complaint is its lack of *facts* on which Yadlosky's beliefs of recklessness are based, and its lack of particularized "*facts* giving rise to a strong inference" that the defendant auditors acted recklessly. *See* 15 U.S.C. § 78u–4(b)(1–2) (emphasis added). Paragraph 110 simply alleges the auditors' motives to make misrepresentations in MCA's financial statements. The only motive directly linked to defendants GTLLP and DM & C is the motive to continue receiving substantial auditing fees, a motive insufficient

to support a strong inference of scienter as a matter of law. *See Comshare,* 183 F.3d at 551, 553. Plaintiff does not allege another motive as to why the defendant auditors would "allow" MCA to pay $127,580.00 toward Patrick Quinlan's charge card expenses, $57,267.00 for maintaining condominiums, $15,547.00 for luxury vehicles, or $1.0 million to MCA directors' relatives for consulting services. At the March 13, 2000 hearing, plaintiff Yadlosky admitted that these expenses may in fact be legitimate MCA business expenses.

Paragraph 111 of the second amended complaint sets forth statements allegedly made by the defendant auditors in an April 28, 1998 Report of Independent Certified Public Accountants, specifically in "NOTE 8—RELATED PARTY TRANSACTIONS" and in a definition of accounts receivables. Plaintiff Yadlosky does not allege particularized facts to support his beliefs that the statements represent: "an extreme departure from the standard of ordinary care", paragraph 112; "reckless behavior", paragraph 114; "a red flag", paragraph 116; "an erroneous depiction of the true financial condition of MCA", paragraph 124, and/or; "information . . . they knew was illegal", paragraph 126. *See* 15 U.S.C. § 78u–4(b)(1–2). The complaint does not explain what information was "illegal". Plaintiff's allegation that the statements "[f]ailed to disclose the overlapping and intertwined relationship between the various MCA related entities and the effect that their intercompany loans had on the solvency of the entities" is actually contradicted by the definition of "accounts receivable" wherein it is explained to the reader that substantial amounts of money were payable to MCA from other entities owned by MCA directors and shareholders, pass though trusts and limited partnerships, and that receipt of those funds by MCA "is substantially dependent upon successful syndication of partnership interests and operating cash flows generated by rental operations." Second Amended Complaint, paragraph 111. To the extent the audited financial statements allegedly

violated GAAP and GAAS, such is insufficient to support a strong inference of scienter. *See Comshare*, 183 F.3d at 553. Plaintiff's allegations that the defendant auditors failed to design or implement an audit system that would detect fraud alleges an affirmative duty, not particularized facts. Plaintiff's allegation that the auditors knew or should have known "that many of MCA's properties were illegally pledged as collateral for more than one party" lacks alleged factual support for the conclusion.

In the final analysis, plaintiff Yadlosky's sole factual allegation is that the defendant auditors GTLLP and DM & C published statements in an April 28, 1998 Report of Independent Certified Public Accountants. The conclusionary allegations that the statements are "deliberately reckless", "an extreme departure from the standards of ordinary care", "an erroneous depiction of the true financial condition of MCA", are based on "illegal information", are so reckless "that no reasonable accountant would have made the same decisions if confronted by the same facts", and demonstrate a disregard for "red flags" are not supported by factual allegations that could possibly give rise to a strong inference of intentional or reckless conduct. 15 U.S.C. § 78u-4(b)(1-2); *Comshare*, 183 F.3d at 549. In comparison to the circumstances alleged in *Comshare*, which were found insufficient to support actionable federal securities fraud claims, plaintiff Yadlosky's claims are even less specific. *Id.* at 547. At best, plaintiff has alleged facts that might support a finding that the defendant auditors GTLLP and DM & C possessed the motive and opportunity to commit securities fraud. Plaintiff cannot support his securities fraud claims on these facts alone. Yadlosky is not entitled to conduct a "fishing expedition" by making conclusionary allegations that he may or may not support later with particularized allegations of fact. *See In re Credit Acceptance Corp.*, 50 F.Supp.2d at 671. Pursuant to 15 U.S.C. § 78u-4(b)(3), and consistent with 15 U.S.C. § 78u-4(b)(1-2), *Comshare*, and

Rule 9(b), defendants GTLLP and DM & C are entitled to the dismissal of plaintiff Yadlosky's § 10(b) and Rule 10b-5 claims as a matter of law.

ii.

■ A § 20(a) claim provides liability for "controlling persons".

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a). "The term control (including the terms controlling, controlled by and under common control with) means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405.

> There must be some showing of actual participation in the corporation's operation or some influence before the consequences of control may be imposed. Further, there must be some showing of actual participation in the activities which allegedly violated the securities laws. This culpable participation standard is met ... by evidence that the "controlling persons" encouraged and permitted the issuance of statements they knew were false.

*Bomarko, Inc. v. Hemodynamics, Inc.*, 848 F.Supp. 1335, 1339 (W.D.Mich.1993) (internal citations omitted).

■ Plaintiff Yadlosky has failed to allege particularized facts that could support a finding that the defendant auditors GTLLP and DM & C possessed direct or indirect power to direct or cause the di-

rection of the management and policies of MCA. An independent auditor's mere act of certifying financial statements is, alone, insufficient to establish "controlling person" liability. *See In re Commonwealth Oil/Tesoro Petroleum Securities Litigation,* 484 F.Supp. 253, 269 (W.D.Tex.1979). Plaintiff's second amended compliant does not allege facts to support a strong inference that GTLLP's and DM & C's participation with MCA went beyond certifying MCA's financial statements.

Plaintiff nonetheless argues GTLLP and DM & C may be held liable under § 20(a) pursuant to the "group published information" presumption. "To rely upon the 'group published information' presumption, [a plaintiff's] complaint must contain allegations that an outside director either participated in the day-to-day corporate activities, or had a special relationship with the corporation, such as participation in preparing or communicating group information at particular times." *In re GlenFed, Inc. Securities Litigation,* 60 F.3d 591, 593 (9th Cir.1995). "Operational involvement" is a prerequisite for group pleading. *Id.*

Plaintiff has failed to allege facts that could support a strong inference that GTLLP and DM & C participated in MCA's daily operations or otherwise exercised operational involvement with MCA. Plaintiff has also failed to proffer authority for the proposition that independent auditors, like outside directors, may be held liable as "controlling persons" under a "group published information" presumption. Pursuant to 15 U.S.C. § 78u–4(b)(3) and Rule 9(b), defendants GTLLP and DM & C are entitled to the dismissal of plaintiff Yadlosky's § 20(a) claims as a matter of law.

### B.

#### *RICO Claims*

 Defendants GTLLP and DM & C argue that plaintiff's RICO claims are premised upon allegations of securities fraud, which cannot support a RICO claim

as a matter of law. Defendants also argue that plaintiff has not alleged factual allegations that could possibly support a requisite finding that they participated in the operation or management of MCA's alleged scheme to defraud.

18 U.S.C. § 1964(c) provides for RICO civil remedies and reads:

(c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, *except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.* The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.

(emphasis added). "[T]o conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs" for purposes of RICO liability, "one must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young,* 507 U.S. 170, 185, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). An accounting firm's failure to advise its client regarding the appropriateness of a financial statement is insufficient to find that the accounting firm participated in the operation or management of the client's enterprise through a pattern of racketeering activity. *Id.* at 186, 113 S.Ct. 1163 (interpreting 18 U.S.C. § 1962(c)).

Plaintiff Yadlosky can prove no set of facts that would entitle him to relief under his RICO claims. Pursuant to 18 U.S.C. § 1964(c), plaintiff's claims, all related to MCA securities fraud, cannot support a RICO civil claim as a matter of law.

Plaintiff has also failed to allege facts that could support a finding that GTLLP and DM & C participated in the operation or management of an enterprise to accomplish securities fraud beyond performing their functions as independent auditors. Construing the pleadings in a light most favorable to plaintiff Yadlosky, GTLLP and DM & C are entitled to the dismissal of Yadlosky's RICO claims. *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99; *G.M. Engineers and Associates, Inc.*, 922 F.2d at 330.

## II.

### *State Claims*

Defendants GTLLP and DM & C argue that plaintiff's claim under M.C.L. § 451.501 of Michigan's Uniform Securities Act should be dismissed because the statute does not support a private cause of action. Defendants continue that plaintiff's remaining state law claims should be dismissed because: (1) plaintiff's state claims other than fraud and misrepresentation are barred by Michigan's Accountant Liability Act, M.C.L. § 600.2962; (2) plaintiff cannot maintain a third-party beneficiary claim because MCA investors were not intended beneficiaries of the defendants' auditing contracts with MCA; (3) plaintiff has not plead his state fraud claim with requisite specificity, and; (4) plaintiff has not plead facts that could support findings of fraudulent intent, justifiable reliance, or damages resulting from such justifiable reliance.

### A.

■ "The rights and remedies provided by [the Uniform Securities Act] are in addition to any other rights or remedies that may exist at law or in equity, but this act does not create any cause of action not specified in [M.C.L. § 451.810] or [M.C.L. § 451.602(e) ]." M.C.L. § 451.810(h). Plaintiff's claim as alleged in Count XI, violation of M.C.L. § 451.501, fails to state a claim on which relief may be granted by operation of M.C.L. § 451.810(h). GTLLP and DM & C are entitled to the dismissal of Yadlosky's violation of M.C.L. § 451.501 claim as a matter of law. *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99; *G.M. Engineers and Associates, Inc.*, 922 F.2d at 330.

### B.

■ Michigan's Accountant Liability Act provides:

This section applies to an action for professional malpractice against a certified public accountant. A certified public accountant is liable for civil damages in connection with public accounting services performed by the certified public accountant only in 1 of the following situations:

(a) A negligent act, omission, decision, or other conduct or the certified public accountant if the claimant is the certified public accountant's client.

(b) An act, omission, decision, or conduct of the certified public accountant that constitutes fraud or an intentional misrepresentation.

(c) A negligent act, omission, decision, or other conduct of the certified public accountant if the certified public accountant was informed in writing by the client at the time of engagement that a primary intent of the client was for the professional public accounting services to benefit or influence the person bringing the action for civil damages. For the purposes of this subdivision, the certified public accountant shall identify in writing to the client each person, generic group, or class description that the certified public accountant intends to have rely on the services. The certified public accountant may be held liable only to each identified person, generic group, or class description. The certified public accountant's written identification shall include each person, generic group, or class description identified by the client as being benefitted or influenced.

M.C.L. § 600.2962. The Accountant Liability Act became effective on March 28, 1996, and has been held not to apply to

causes of action that accrued before March 28, 1996. *See Ohio Farmers Ins. Co. v. Shamie,* 235 Mich.App. 417, 423, 597 N.W.2d 553 (1999). Further, the statute does not apply to breach of contract claims, and therefore does not bar third-party beneficiary breach of contract claims. *Id.* at 424, 597 N.W.2d 553.

▮ Plaintiff Yadlosky's state claims of breach of fiduciary duty, negligent misrepresentation, and negligent and wanton supervision are barred by Michigan's Accountant Liability Act. The Act clearly applies to the alleged auditing and preparation of 1996–1998 financial reports and statements. Plaintiff Yadlosky does not allege that he or any other MCA investor was a client of GTLLP and DM & C. *See* M.C.L. § 600.2962(a). Plaintiff does not argue that these tort claims require proof of fraud or intentional misrepresentation. *See* M.C.L. § 600.2962(b). Finally, plaintiff does not allege that GTLLP or DM & C were informed in writing by MCA that a primary intent was for GTLLP's and DM & C's auditing services to benefit MCA investors, or that GTLLP or DM & C identified to MCA in writing any person or group intended to benefit from the auditing services. *See* M.C.L. § 600.2962(c). Construing the pleadings in a light most favorable to plaintiff Yadlosky, GTLLP and DM & C are entitled to the dismissal of Yadlosky's breach of fiduciary duty, negligent misrepresentation, and negligent and wanton supervision claims as a matter of law pursuant to M.C.L. § 600.2962. *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99; *G.M. Engineers and Associates, Inc.,* 922 F.2d at 330.

### C.

▮ Michigan has enacted a third-party beneficiary statute:

Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.

(1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something *directly to or for* said person.

M.C.L. § 600.1405(1) (emphasis added). Use of the term "directly" "indicates the Legislature's intent to assure that contracting parties are clearly aware that the scope of their contractual undertakings encompasses a third party, directly referred to in the contract, before the third party is able to enforce the contract." *Koenig v. City of South Haven,* 460 Mich. 667, 676–677, 597 N.W.2d 99 (1999).

▮ While the court agrees with plaintiff Yadloski that *Shamie* holds that the Accountant Liability Act does not bar a claim third-party beneficiary breach of contract claim, *Shamie,* 235 Mich.App. at 424, 597 N.W.2d 553, plaintiff Yadlosky has nonetheless failed to allege an actionable third-party beneficiary breach of contract claim. Plaintiff does not allege facts that could possibly support a finding that, in their auditing services contracts, GTLLP, DM & C and MCA directly referred to MCA investors as direct beneficiaries of the contracts. Plaintiff has not alleged facts that could support a finding that GTLLP or DM & C promised MCA to audit MCA's financial statements for the benefit of MCA investors. Consequently, GTLLP and DM & C are entitled to the dismissal of Yadlosky's third-party beneficiary claims as a matter of law. *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99; *G.M. Engineers and Associates, Inc.,* 922 F.2d at 330.

### D.

▮ Fraud requires proof of six elements: "(1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the

intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury." *Hi–Way Motor Co. v. International Harvester Co.,* 398 Mich. 330, 336, 247 N.W.2d 813 (1976). Fraud may be actionable as a "suppression of truth", or silent fraud, where the defendant owed a legal or equitable duty to disclose to the plaintiff. *See United States Fidelity and Guaranty Co. v. Black,* 412 Mich. 99, 125, 313 N.W.2d 77 (1981). "If the deceived party prefers a claim for damages in an action of deceit, it rests with him not only to show that the representation made was false in fact, but also fraudulent in intent, or at any rate made recklessly or without reasonable grounds for believing it to be true." *Clement v. Crosby & Co.,* 148 Mich. 293, 316, 111 N.E. 745 (1907). Common law fraud claims alleged in federal district court must meet the pleading requirements of Federal Rule of Civil Procedure 9(b), and are subject to dismissal if not plead with the requisite particularity. *See American Town Center v. Hall 83 Associates,* 912 F.2d 104, 109 (6th Cir.1990).

 Plaintiff Yadlosky's remaining claims of common law fraud, suppression of truth, and deceit fail to plead fraud with the particularity required by Rule (9)(b). Each of the claims requires proof of scienter, that is, that GTLLP and/or DM & C knowingly or recklessly made false statements. As set forth in Section I., A., i., *supra,* plaintiff Yadlosky's second amended complaint does not contain sufficient factual allegations to support a finding that GTLLP and/or DM & C knowingly or recklessly made false statements in the various financial reports.[1] *See Hi–Way Motor Co.,* 398 Mich. at 336, 247 N.W.2d 813. GTLLP and DM & C are entitled to the dismissal of Yadlosky's common law fraud, suppression of truth, and deceit claims as a matter of law. *Conley,* 355

U.S. at 45–46, 78 S.Ct. 99; *G.M. Engineers and Associates, Inc.,* 922 F.2d at 330.

For the reasons set forth above, defendants Grant Thornton, L.L.P.'s and Doeren Mayhew & Co., P.C.'s motions to dismiss plaintiff David Yadlosky's several state and federal claims is hereby GRANTED. Plaintiff Yadlosky has not again moved to amend his claims. Plaintiff Yadlosky's claims against defendants Grant Thornton, L.L.P. and Doeren Mayhew & Co., P.C. ONLY are hereby DISMISSED WITH PREJUDICE.

SO ORDERED.

---

1. The court acknowledges plaintiff Yadlosky's state law claims of common law fraud, suppression of truth, and deceit are not governed by the pleading requirements of the PSLRA, 15 U.S.C. § 78u–4(b)(1–2). These claims are governed by the federal specificity requirements of Rule 9(b). Plaintiff's state law fraud claims are not plead with the requisite particularity.