*In re* HALMAGHI ESTATE

Docket No. 112771. Submitted April 4, 1990, at Detroit. Decided June 18, 1990.

Viorel Halmaghi, a citizen of West Germany, and Elena Pintilie, a Romanian who spoke very little German, signed a "Marriage Contract," written in German, in the presence of an interpreter and a notary in West Germany. Two days later they were married and shortly thereafter came to live in Dearborn, Michigan. Approximately thirteen months after their marriage, Viorel died. Elena filed a petition for probate in the Wayne County Probate Court. Viorel's two children by a prior marriage petitioned the court for removal of Elena as fiduciary, contending that the marriage contract was an effective antenuptial agreement by which Elena waived all rights in the property and estate of Viorel Halmaghi and that she therefore could not be an "interested party" in the estate as defined by the Revised Probate Code. The court, Freddie G. Burton, J., tested the validity of the agreement under Michigan law and found it invalid because it did not meet the standards of full and fair disclosure between the husband and wife. The petition for removal was denied, and petitioners, Viorel's children, appealed.

The Court of Appeals *held:*

The record supports the probate court's findings that the widow was not informed of her rights as required by the Revised Probate Code. The court correctly determined that without disclosure there could not be a knowing waiver of her rights. The court's finding of nondisclosure, expressed in terms of nondisclosure of assets, is buttressed by the fact that full and fair disclosure was not made of a married woman's legal rights and what effect the agreement would work on them as well.

Affirmed.

1. HUSBAND AND WIFE — ANTENUPTIAL AGREEMENTS — DISCLOSURE OF ASSETS.

An antenuptial agreement, to be valid, must be fair, equitable,

REFERENCES

Am Jur 2d, Husband and Wife §§ 280, 296-300, 313, 314.

See the Index to Annotations under Antenuptial Contracts and Agreements; Decedents' Estates.

and reasonable in view of the surrounding facts and circumstances; each party must enter the agreement voluntarily and must provide fair disclosure of assets to enable the other to understand the rights involved and the extent of the waiver of such rights.

2. Husband and Wife — Antenuptial Agreements — Disclosure of Assets — Burden of Proof — Presumptions.

The burden of proving nondisclosure of assets upon making an antenuptial agreement is on the party seeking to invalidate the agreement; however, a rebuttable presumption of nondisclosure may arise where (1) the agreement provides for the complete waiver by the widow of all rights in her husband's property and of her right of election without making any provision for her upon her husband's death, (2) the husband's estate is ample compared to his wife's, (3) the decedent is shown to have been rather secretive about his financial affairs, to have lived modestly, and to have given no outward appearance of wealth, (4) the agreement does not indicate, generally or specifically, whether the parties were fully informed of each other's property interest, (5) the widow was not represented by independent counsel, and (6) the drafter is unable to testify that full disclosure was made by the parties and had no concern at the time of the agreement about the widow's share of the property upon her husband's death.

*Kramer, Mellen, Wagner & Ishbia, P.C.* (by *Eric S. Rosenthal*), for petitioners.

*Stroia & Stroia* (by *Eugene J. Stroia*), for respondent.

Before: Gribbs, P.J., and Michael J. Kelly and Shepherd, JJ.

Michael J. Kelly, J. On May 14, 1986, Viorel Halmaghi and Elena Pintilie signed a "Marriage Contract" in the presence of Sara Zink, an interpreter, and Manfred Geberth, a notary, in Stuttgart-Bad Cannstatt, West Germany. Viorel and Elena married two days later and very shortly thereafter came to reside in Dearborn, Wayne

County, Michigan. Viorel, the husband, died June 30, 1987, whereupon Elena filed a petition for probate in the Wayne County Probate Court. Appellants, decedent's two children by a prior marriage, petitioned the probate court for removal of Elena as fiduciary, contending that the "Marriage Contract" was an effective antenuptial agreement by which Elena waived all rights in the property and estate of decedent and, accordingly, she could not be an interested party as defined in § 7(3) of the Michigan Revised Probate Code, MCL 700.7(3); MSA 27.5007(3). The probate court tested the validity of the Marriage Contract/antenuptial agreement under Michigan law in accordance with the factors announced in *In re Benker Estate,* 416 Mich 681; 331 NW2d 193 (1982), and found the agreement invalid "because it did not meet the standards of full and fair disclosure between the husband and wife." We affirm.

There is no uncertainty as to what law to apply. Neither party argues on appeal that West German law governs this marriage contract, nor was the issue pled or proven by either party before the probate court. In any event, conflict of laws questions not raised below are waived on appeal. *Dunn Road Machinery Co v Charlevoix Abstract & Engineering Co,* 247 Mich 398, 403; 225 NW 592 (1929); *Waldron v Drury's Van Lines, Inc,* 1 Mich App 601, 607; 137 NW2d 743 (1965).

The children claim the probate court erred. They urge that the marriage contract/antenuptial agreement was valid because (1) it expressly states that the parties have been informed about the legal implications of separation of property with regard to the law of succession, (2) it expressly indicates that the signators agreed that any assets belonging to either spouse shall remain the property of the spouse in whose name they were is-

sued, and (3) it contained a full disclosure of the deceased husband's assets.

The widow contests these allegations, claiming that she was told only that the instrument was to be effective only in the event of divorce and that she was not informed of the contents by the interpreter.

The children urge that the probate court misinterpreted *In re Benker Estate, supra,* because the burden of invalidating the antenuptial agreement was not carried by the widow. However, we find that this record supports the probate court's finding that the widow was not informed of her rights pursuant to MCL 700.291; MSA 27.5291:

> The rights of the surviving spouse to an estate or to dower under sections 1 to 29 of chapter 66 of the Revised Statutes of 1846, as amended, being sections 558.1 to 558.29 of the Michigan Compiled Laws [MSA 26.221-26.245], homestead allowance, election, exempt property, and family allowance, and the right to remain in the dwelling house of the decedent as provided in section 288 or any of them, may be waived, wholly or partially, before or after marriage, by a written contract, agreement, or waiver signed by the party waiving *after fair disclosure.* [Emphasis added.]

There was no disclosure of any of the above rights and the trial court was correct in determining that without disclosure there could be no knowing waiver. We interpret the disclosure rules enunciated in *In re Benker Estate* to encompass more than merely the physical assets:

> In order for an antenuptial agreement to be valid, it must be fair, equitable, and reasonable in view of the surrounding facts and circumstances. It must be entered into voluntarily by both par-

ties, with each understanding his or her rights and the extent of the waiver of such rights. [*In re Benker Estate, supra* at 689.]

Compare *Sumpter v Kosinski,* 165 Mich App 784, 802-806; 419 NW2d 463 (1988), lv den 430 Mich 887 (1988).

Although the burden of proof of nondisclosure is on the party seeking to invalidate the antenuptial agreement, the *Benker* Court also held that "there will be instances where there is sufficient evidence to raise a rebuttable presumption of non-disclosure." *Id.* at 692. This presumption is raised not merely on the basis of a disproportionately small allowance for the wife, but rather:

> [T]he presumption is properly invoked when the facts are, in general, as follows. One, the antenuptial agreement provides for a complete waiver of all rights of inheritance and rights of election by the widow and does not make any provision for her upon her husband's death. Two, the husband's estate is very ample in comparison to the wife's. Three, the decedent was shown to be rather secretive about his financial affairs, lived very modestly, and gave no outward appearance of his wealth. Four, the agreement makes no reference whatsoever, in general or specific terms, to whether the parties had been fully informed of the property interests held by each other. Five, the widow was not represented by independent counsel. Six, the attorney who drafted the subject agreement testified in a deposition as to his normal procedure in such a matter and stated that he normally would discuss the assets of the parties, but that he did not press the full disclosure matter. Seven, the scrivener testified that he was not concerned with what the widow would get. These factors support the trial judge's decision to invoke the presumption of non-disclosure. [*In re Benker Estate, supra* at 692-693.]

Here, the probate court applied the above factors to the contract at issue and found as fact:

1. The agreement provides for a complete waiver of all rights of inheritance and rights of election by the widow and does not make any provision for her upon her husband's death. The document states:

"[W]e wish to state that all and any assets and claims belonging to either spouse shall remain the property of the spouse in whose name such assets and/or claims were issued."

The agreement also states: "A pension rights adjustment is not excluded."

There is no indication whether divorce or death of the parties is contemplated, and no provision is made for the widow upon her husband's death.

2. The husband's estate is very ample in comparison with the wife's.

Although both parties claim "We do not wish to set up a list of assets," the very next paragraph lists several assets of the husband:

1. A home in Dearborn, Michigan

2. An account of $30,000 in the U.S.

3. Four Daimler-Benz passenger cars in the U.S.

4. Two accounts in Europe which funds are held in Deutchmarks.

There is no indication as to whether this is a complete or partial list of assets. Specific assets of the bride, if any, are not mentioned. This paucity of details on the relative financial worth of the parties gives rise to the conclusion that the husband's estate was considerably larger than his wife's. The deceased was a West Germany citizen with assets in that country and in the United States. The widow was a Romanian-born refugee living in West Germany with a limited command of the German language.

3. This agreement, like the one in *Benker,* makes no reference whatsoever, in general or specific terms, whether the parties had been fully

informed of the property interests held by the other party.

4. The widow was not represented by independent counsel.

It is not clear how this document was created. The name of the scrivener of the document is not known. Therefore, the person responsible for this document cannot testify to the details of its creation. The only testimony in this regard comes from the widow, who claimed under oath in Court, that she had never seen the document before being presented with it at the Notarial registry.

The document was in German. No Romanian language written translation was provided. An interpretor [sic] had to be present to provide a simultaneous translation of the document for the bride's benefit. The translator was a woman whom the bride had met through her husband. Although the agreement states that a written translation was waived, the translator was not under oath.

The Notary's function was to ascertain the identities of the parties, read the document out loud in German, and affix the official Notarial seal. His main concern was to make sure that the document met the formalities so that it could be filed in the Register of Conjugal Property Regimes at the competent District Court in accordance with the German Civil Code, specifically Sections 1414 and 1412 BGB.

We find no clear error in the probate court's factual findings, particularly given the deference we accord to the trial court's assessment of witness credibility. *Sumpter, supra* at 804. Furthermore, while the probate court's finding of nondisclosure is expressed in terms of nondisclosure of assets, we also find that the court's factual findings support the conclusion that full and fair disclosure was not made of a married woman's legal rights and what effect the agreement would work on them as well.

We find no error in the probate court's ruling

that the antenuptial agreement was invalid on the basis of the properly established and unrebutted presumption of nondisclosure. Consequently, the probate court's order denying the petition to remove Elena Halmaghi as temporary personal representative is affirmed.

Affirmed.