*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

NAUSHEEN FARNAZ ALI,

        Plaintiff-Appellee,

UNPUBLISHED
January 29, 2019

v

No. 342196
Kent Circuit Court
LC No. 16-009498-DO

KHAJA NASEERUDDIN SYED,

        Defendant-Appellant.

Before: MARKEY, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

Defendant, Khaja Naseeruddin Syed, appeals as of right from the trial court's award of a $47,100 money judgment in favor of plaintiff, Nausheen Farnaz Ali, in the context of the parties' divorce. We affirm.

## I. BACKGROUND

In 2012, defendant approached Mohammed Ali and asked permission to marry plaintiff, Mr. Ali's daughter. Defendant and Mr. Ali negotiated the terms of the arranged marriage. Mr. Ali proposed that defendant could marry his daughter if defendant paid her $51,000, a payment the parties referred to as mahr, a traditional component of Islamic marriages. Defendant agreed to the payment proposed by Mr. Ali. Plaintiff considered defendant's offer of marriage, on the financial terms negotiated by her father, for approximately one year. Plaintiff ultimately decided to accept defendant's proposal and the parties married in 2013.

It is uncontested that plaintiff and defendant had only a verbal agreement for payment of $51,000, in consideration of marriage, until the day of their marriage ceremony in the state of Illinois. During that ceremony, the parties signed a document that placed the contract to marry in writing. The one-page document signed by the parties was titled "Marriage Certificate." The document stated that "The Groom Khaja Naseeruddin Syed age 30 solemnly proposes to marry Miss Nausheen Farnaz Ali and take her as my wife and agree to pay Mahr of $51,000 Later." Furthermore, the document stated that "The Bride Nausheen Farnaz Ali age 26 Solemnly accept the proposal of Mr. Khaja Naseeruddin Syed to take me as his wife with agreed Mahr." Both parties signed the contract in the presence of witnesses.

During the course of the marriage, defendant made several payments, totaling $3,900, toward the $51,000 mahr. In 2016, plaintiff filed an action for separate maintenance and defendant filed a counterclaim for divorce. Although not specifically mentioned in the pleadings filed by the parties, plaintiff raised the issue of the contract to marry during the course of the trial court proceedings. During the divorce trial, plaintiff asked the trial court to enforce the contract to marry and award her $47,100, the unpaid amount of the mahr. The trial court concluded that the parties executed a valid, simple contract and entered a judgment in plaintiff's favor in the amount of $47,100. In addition, the trial court granted the parties a judgment of divorce, denied plaintiff's request for spousal support, and divided the parties' marital assets. Defendant appeals from the judgment of divorce, arguing that the trial court erred in awarding a money judgment to plaintiff in the amount of $47,100. We disagree.

## II. ANALYSIS

### A. STANDARD OF REVIEW

"The existence and interpretation of a contract are questions of law reviewed de novo." *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). "Questions of law, such as the application and interpretation of a statute, are reviewed de novo." *Kessler v Kessler*, 295 Mich App 54, 57; 811 NW2d 39 (2011).

### B. CHOICE OF LAW

At the outset, we note that neither party addressed whether Illinois or Michigan law applies to the validity of the parties' contract, given that the parties signed the contract to marry and married in the state of Illinois. Our examination of the trial court record contains no pleading or argument by either party that Illinois law applies to this contract. The trial court, however, expressly addressed the issue and concluded that Michigan law, rather than Illinois law, applied. Because neither party pleaded or argued in the trial court that Illinois law applied, neither party argues for the application of Illinois law on appeal, and the trial court stated that it was applying Michigan law, we conclude that both parties have waived any argument for the application of Illinois law. See *In re Estate of Halmaghi*, 184 Mich App 263, 265; 457 NW2d 356 (1990) (holding that "conflict of laws questions not raised below are waived on appeal").

### C. FAILURE TO PROPERLY PLEAD THE CONTRACT

Defendant first argues that plaintiff failed to plead the contract under MCR 2.111(F)(3), which provides:

> Affirmative defenses must be stated in a party's responsive pleading, either as originally filed or as amended in accordance with MCR 2.118. Under a separate and distinct heading, a party must state the facts constituting
>
> (a) an affirmative defense, such as contributory negligence; the existence of an agreement to arbitrate; assumption of risk; payment; release; satisfaction;

discharge; license; fraud; duress; estoppel; statute of frauds; statute of limitations; immunity granted by law; want or failure of consideration; or that an instrument or transaction is void, voidable, or cannot be recovered on by reason of statute or nondelivery;

>(b) a defense that by reason of other affirmative matter seeks to avoid the legal effect of or defeat the claim of the opposing party, in whole or in part;

>(c) a ground of defense that, if not raised in the pleading, would be likely to take the adverse party by surprise.

We conclude that defendant's argument is without merit. Plaintiff began this case with the filing of an action for separate maintenance. At the time she filed that complaint, plaintiff was not a party against whom a cause of action had been asserted, and her complaint was not a responsive pleading. Therefore, MCR 2.111(F)(3) does not apply to the contents of her complaint. Furthermore, defendant is plainly incorrect to suggest that plaintiff was required to assert an affirmative defense in her original complaint seeking separate maintenance.

Defendant did file a counterclaim for divorce. Upon the filing of that counterclaim, plaintiff became a party against whom a cause of action had been asserted by counterclaim. Therefore, she was required to assert in a responsive pleading the defenses that she had against the counterclaim for divorce, MCR 2.111(F)(2), and was required to state in her responsive pleading any affirmative defenses, MCR 2.111(F)(3). The contract between the parties, however, was neither a defense nor an affirmative defense against the counterclaim for divorce. Plaintiff raised the contract in the context of the trial court's distribution of marital assets. Plaintiff's complaint for separate maintenance asked the trial court to divide the parties' property equitably, and defendant's counterclaim for divorce asked the trial court to enter a final judgment of divorce with a fair and equitable division of property, assets, and liabilities. Plaintiff sensibly raised the contract between the parties as one of the liabilities that the trial court had to determine and distribute between the parties. Plaintiff simply did not raise the contract as either a defense or an affirmative defense. Accordingly, MCR 2.111(F)(3) does not apply and defendant is not entitled to relief on this issue.

## D. ANTENUPTIAL AGREEMENTS

Defendant next argues that the contract between the parties is an unenforceable antenuptial agreement. Defendant raised this argument below and the trial court ruled that the contract was not an attempt at an antenuptial agreement. We agree with the trial court.

In *Rinvelt v Rinvelt*, 190 Mich App 372, 382; 475 NW2d 478 (1991), this Court held that "antenuptial agreements governing the division of property in the event of divorce are enforceable in Michigan." It is clear from the face of the parties' contract, however, that it did not attempt to address the division of property in the event of divorce. Rather, the contract provided for payment from defendant to plaintiff in the amount of $51,000 as consideration for

plaintiff's agreement to marry defendant. The additional fact that defendant made payments to plaintiff on the amount of the mahr, during their marriage, indicates that the contracted payment of $51,000 was not an attempt to address the division of property in the event of divorce. Therefore, the contract between the parties in this case was not an attempt at an antenuptial agreement and defendant is not entitled to relief on this issue.

## E.  SHARIAH LAW DOES NOT APPLY

Defendant next argues that the contract states on its face that it was made under Shariah law and that it was not made under any state law. Defendant argues that the contract merely provides for a religious obligation rather than an enforceable contractual obligation under Michigan law. Defendant further argues that, under the ecclesiastical abstention doctrine, the courts of the state of Michigan lack jurisdiction to enforce Islamic marriage contracts. We disagree.

The trial court clearly stated that it was not applying Shariah law, but was applying Michigan law to the parties' contract. Despite defendant's argument that the contract was a ceremonial document governed only by Shariah law and not by the civil law of any state, we also stress that we are not interpreting or applying the contract between the parties under Shariah law, but are applying Michigan law to the review of the parties' contract and the judgment of divorce entered by the trial court.

In *Winkler by Winkler v Marist Fathers of Detroit, Inc*, 500 Mich 327, 339; 901 NW2d 566 (2017), our Supreme Court explained that judicial interference with consideration of church doctrine, discipline, or proceedings is inconsistent with religious liberty, and directed the courts of this state to take care such that, "in adjudicating a particular case, a civil court does not infringe the religious freedoms and protections guaranteed under the First Amendment." The application of the ecclesiastical abstention doctrine hinges on whether "the actual adjudication of a particular legal claim would require the resolution of ecclesiastical questions." *Id*. at 341.

In this case, neither the trial court nor this Court is required to resolve ecclesiastical questions. The trial court did not claim any power to grant the parties a divorce under Islamic law, but only the power to grant the parties a civil divorce under Michigan law. The trial court did not claim any power to decide the parties' respective religious obligations under the tenets of their faith tradition, but only decided the parties' respective obligations under long-established principles of Michigan contract law. Because this case does not require the resolution of any ecclesiastical questions, we conclude that defendant's argument is without merit.

## F.  ILLUSORY CONTRACT

Finally, defendant argues that the contract is unenforceable because it is illusory and lacks consideration. We disagree.

It has long been the law in this state that the "promise to marry, followed by consummation, furnished a valuable consideration" for a contract to marry. *Storey v Storey*, 275 Mich 675, 679; 267 NW 763 (1936) (recognizing a woman's right to retain the monetary consideration exchanged for her agreement to marry, when she performed her promise to marry). Plaintiff fulfilled her contractual promise to marry defendant. As our Supreme Court explained long ago, "The marriage was a performance on her part. She was entitled to performance on his part." *Bland v Bland*, 212 Mich 549, 556; 180 NW 445 (1920) (recognizing that a woman's right to specific performance of the financial terms of a contract to marry). Under this long-established precedent, the contract was supported by adequate consideration and was not illusory.[1]

Affirmed. Plaintiff, having prevailed in full, may tax costs under MCR 7.219.

/s/ Jane E. Markey
/s/ Michael J. Kelly
/s/ Brock A. Swartzle

---

[1] We note that neither of the parties nor the trial court addressed whether the contract involved in this case was rendered unenforceable by MCL 600.2901, which abolished the cause of action for breach of a contract to marry. It is unclear to us whether the statute was intended to apply to the type of contract presented in this case. For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the trial court. *People v Metamora Water Service, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Therefore, we leave resolution of this question for a future case in which the question is properly before this Court.